## STATE OF VERMONT v. JESSE PRESCOTT.

### Act of 1852, to prevent traffic in intoxicating liquors.

The provisions of the 12th section of the act of 1852, entitled an act to prevent traffic in intoxicating liquors for the purpose of drinking, *held* constitutional, REDFIELD, CH. J. dissenting. (See *post*, Lincoln v *Smith et al.*)

This was a proceeding under the twelfth section of the act entitled "an act to prevent traffic in intoxicating liquors for the purpose of drinking," approved November 23, 1852, (Laws of 1852, p. 23,*) which was brought into the county court by appeal in the manner provided by said act.

---

*Said twelfth section reads as follows: "If any three persons, voters in any town, shall make complaint under oath or affirmation, before any justice of the peace in the county, that they have reason to believe, and do believe, that intoxicating liquor is kept or deposited in any dwellinghouse, store, shop, steamboat, or water-craft of any kind, depot, railroad car, or land carriage of any kind, warehouse or other building or place in said town, and intended for sale, by any person not authorized to sell the same, said justice of the peace shall issue a warrant, to any sheriff or constable of the state, to search the premises described in such complaint; and if any intoxicating liquor is found therein under circumstances warranting the belief that it is intended for sale contrary to the provisions of this act, such officer shall seize the same and convey it to some proper place of security, and keep the same until final action is had thereon; and the owner or keeper of the liquor so seized, if he be known to the officer seizing the same, shall be summoned by him to appear forthwith before the justice issuing the warrant; and if he fail to appear, or to show by satisfactory evidence that said liquor is not intended for sale contrary to the provisions of this act, or is of foreign production, that the same has been imported under the laws of the United States, and in accordance therewith, that it is contained in the original packages in which it was imported, in quantities not less than the laws of the United States prescribe, such liquor shall be adjudged forfeited, and shall be destroyed under a written order of said justice, and in his presence, or in the presence of some person appointed by him, and named in said order for that purpose, who shall join with the officer executing such order in certifying, upon the back thereof, the execution of the same; and the owner or keeper of such liquor shall pay to said town a fine of twenty dollars and costs, if, in the opinion of said justice, said liquor was kept or deposited for the purpose of sale contrary to the provisions of this act. And the custom house certificate of importation, and proof of marks on the casks or packages, in which such liquor is contained, corresponding thereto, shall not be received as evidence that the liquor contained in such packages is that actually imported therein."

State v. Prescott.

In the county court, December Term, 1854,—PECK, J., presiding,—a motion to dismiss was filed by the appellant which was overruled, and a trial had by a jury, who returned a verdict of guilty,—after which the appellant moved in arrest of judgment, which motion was also overruled. In both the motion to dismiss, and also in that in arrest, several reasons were set forth which would be equally applicable to any complaint and proceeding which complied with the provisions of said twelfth section; but which it is unnecessary to detail inasmuch as the attention of the supreme court seems to have been principally directed to the question raised respecting the constitutionality of the provisions of said section. The appellant excepted to the decisions of the county court in overruling his motion to dismiss, and in arrest, and also to several decisions made in the course of the jury trial, which, for the reason above mentioned, it becomes unimportant to detail.

The exceptions were argued very much at lengtht by Mr. Bowdish and Mr Aldis, for the respondent, and by the state's attorney, Mr. Royce, and Mr. Pelton for the state, and were held under advisement until the circuit session. In the mean time, the case of *Lincoln* v. *Smith et al.*, in the county of Rutland, which was an action of trespass for spirits destroyed, was argued before the court, and also held under advisement. The court came to no definite determination in regard to either case, at the consultation following the argument. The opinion in the case in Rutland county was drawn up, and, a majority of the court concurring, was delivered at the circuit session in Chittenden county, by BENNETT, J., which will be found reported in this volume among the cases for the county of Rutland.

At the same term, and next following the delivery in court of the opinion in the case in Rutland county, the opinion in this case was delivered by

REDFIELD, CH. J.   This case has been examined with very considerable labor and care, during the time intervening since the argument, and in regard to all the preliminary steps, up to the time of the actual trial, before the court. I do not understand that this court have any insuperable difficulty, in upholding the proceedings in the court below. And it will be obvious, that from the opinion just announced by my learned brother, which has the concurrence of

a majority of the court, the requirements of the statute in regard to the trial, and the *onus probandi*, or what I esteem the dispensation with all evidence, on the part of the state, both in regard to the proceedings against the liquor and against the claimant, for a penalty, are, by a majority of the court, to be upheld also.

While then I cannot but feel, that it is better for the health of public feeling, that a deliberate act of the legislature, especially one so essentially affecting the criminal and police administration of the state, as the one now under consideration, should be upheld when it can fairly be done, I cannot but also feel, that in the particular form, in which this statute was originally passed, it was so defective, as, by any reasonable and natural construction, to be too much at variance with the very first principles of constitutional liberty, in free states, to be defensible without such a degree of refinement, not to say logical evasion, as will expose the administration of the act to so much suspicion and just criticism, as really to weaken, in the public opinion, those leading features of the law, which are unquestionably defensible, upon the soundest grounds of constitutional law, and by the friends of the statute deemed of especial importance to the peace, comfort and well-being of the community.

While then I feel compelled to say, that I have no sympathy with any class of men, who make war upon this statute, or any other law of the state, in a spirit of preconceived reproach, of opprobium, and hypercriticism, of which character I have felt compelled to regard, most of the former attacks upon this law, and while I would cheerfully and gladly uphold this law, and all laws, against any and all such attacks, with the tittle of zeal and strength accorded to me, I cannot but regard it as altogether unadvised and ill-judged, to push the defence of a statute, and especially a statute upon the subject of sumptuary law, a subject so rife with jealousy and suspicion, in all periods of the history of civilized states; to push the defence of such a statute any further than we can fairly justify our course, by just construction, and sound and sensible exposition, seems to me doing an essential disservice to the cause of legal administration, in general, and upon this exciting subject, in particular. There is no subject upon which men are proverbially more sensitive than this. And wise and prudent

administrators of the law, will always be ready to take humanity as they find it, and adapt their measures of legal reform, somewhat to the material, with which they have to deal, and not attempt to run so far before all ordinary forms of legal proceedings as to lose sight, at once, of the public sympathy. Hence, in my judgment there not only is no necessity of attempting to vindicate the extreme provisions of this twelfth section of the statute, as it originally stood, and which has now, almost by general consent, been so modified as to be defensible, upon obvious and acknowledged grounds of legal interpretation, but we thereby perform a very essential disservice to the general force of the statute, with which this section is connected. There is no doubt, in my mind, that any subject of legal reform is more advanced by measures of such stringency only as can be fairly and fully justified to the public mind, than by anything of a more extreme, and questionable character. It has been therefore with less regret, since the obnoxious provisions no longer exist, and the decision will not· therefore be regarded as of much practical importance, that I have felt compelled to the conclusion, that the provisions in this twelfth section, as it originally stood, in regard to proof are characterized by a degree of *one-sidedness*, so to speak, which would never have been attempted, upon any other subject, and is absolutely indefensible upon all subjects.

The substance of the section, upon this point is, that if the officer serving the search warrant, "shall find any intoxicating liquor, under circumstances warranting the belief, that it is intended for sale, contrary to the provisions of this act, such officer shall seize the same, and convey it to some place of security, and keep the same until final action thereon." And the officer is to summon the owner or keeper, to appear forthwith, before the magistrate issuing the warrant; and if he fail to appear, or to show by satisfactory evidence that said liquor is not intended for sale, contrary to the provisions of this act, or is of foreign production," &c., " such liquor shall be adjudged forfeited and shall be destroyed, and the owner, or keeper shall pay a fine of twenty dollars and costs, if *in the opinion of said justice*, said liquor was kept, or deposited for the purpose of sale, contrary to the provisions of this act."

My brethren think the latter clause of the section in regard to the penalty, leaving it dependent upon the opinion of the justice,

presupposes that a formal trial is expected to be had, and proof intro-
duced by the prosecution, in the ordinary mode, and the case decided
like any other criminal case, upon the balance of evidence, or the
exclusion of reasonable doubt, from the mind of the justice, so far
as the penalty is concerned. And if this is the fair construction
of the statute, as it first became a law, it is well enough doubt-
less. This case arose before the amendment of this section and
we must decide it upon the law as it then stood; and comparing
the amendments of this section in 1853,* with the original frame of
the section, it is obvious the legislature, upon all hands, both the
supporters and opposers of the law, regarded the amendments,
as working a very essential modification of the statute. The fourth
section of the statute of 1853, provides that neither the liquor shall
be condemned or a fine imposed, unless "it be shown by satisfac-
tory evidence that said liquor was intended for sale," &c. It is
scarcely supposable, if the statute in its original form, required
proof in the first instance on the part of the prosecution, either
for the purpose of condemning the liquor or enforcing a penalty, it
should not have been suggested by some one in the discussion of
these amendments, or in some way before the necessity occurred,
as in this case, to give the original section in regard to the penalty,
the same construction which the amendment gave it, and to do this
in order to save its conflict with established principles of constitu-
tional law.

The truth is, and the resolute friends of the original law always
so declared, and upon this ground condemned the amendments of
1853, that the original section did not, and was not intended to,
require any proof upon the part of the prosecution, except the
return of the officer, upon the search warrant, that he found the
liquors, under circumstances warranting the belief, that it was inten-

---

* Said amendments were as follows, (See Laws of 1853, p. 20.) SEC. 4. So much of section
twelve of the act to which this is an amendment as provides that if the owner or keeper of
liquor seized under said section "*fail to appear, or show by satisfactory evidence, that said
"liquor is not intended for sale contrary to the provisions of this act,*" and the clause
next following the same, is hereby amended to read as follows: "If he fail to appear, or if
"it be shown by satisfactory evidence that said liquor was intended for sale contrary to the
"provisions of this act, unless such liquor is of foreign production and has been imported
"under the laws of the United States, and in accordance therewith, and is contained in the
"original packages in which it was imported, in quantities not less than the laws of the
"United States prescribe, such liquor," &c.

SEC. 5. So much of section aforesaid as gives authority to the court, under the cir-
cumstances therein named, to impose a fine upon the owner or keeper of liquor seized under
the provisions of said section, if such owner or keeper fail to appear, is hereby repealed.

State *v.* Prescott.

ded for sale, contrary to the statute and this is no proof, at all in a criminal case. The accused in all criminal cases, of whatever grade, is entitled to be held *innocent* until he is *proved* guilty. He is entitled to have the testimony given in open court, and to confront the witnesses, and to cross examine them. And although it is undoubtedly competent for the legislature to define the *onus probandi*, and to declare that certain facts, like the possession of stolen goods, or counterfeit coin in certain quantities, or the possession of liquors, under certain circumstances, shall be regarded as *prima facie* evidence of guilt; it is certainly not competent, for the legisture even, to dispense with all proof of guilt, or to make the return of an officer, which is at most merely *ex parte* and in no sense testimony, to make this, evidence of guilt, as is most obviously here attempted in this statute.

And although from necessity and long acquiescence some of the provisions of magna charta, and the American constitutions, like that requiring a jury trial, in criminal cases, have been held to apply only to such courts, and the offences there triable, as have this mode of trial ; in other words the provisions of the constitution must be received with such limitations, as the necessity of their application, in practice, absolutely require. It was understood however, that the accused, in a justice court or a police court, is as clearly entitled to be held innocent, till he is proved guilty, as in the highest tribunals of the state. He could not be heard, " by himself and his counsel," if he had no means of obtaining counsel, and none attended the forum before which he stood, so that they could assign one to aid him. And he could not demand a jury trial without complying with the statute requiring the fees to be advanced probably, and he could in no event have a jury in an inferior court or one of summary jurisdiction, where none attended by law, or a jury of twelve men, which magna charta and our bill of rights undoubtedly intend by " a jury of the country," he could not have this, where the general organization of the court, only provided for a jury of six men, as in our justice courts ; and he could not perhaps justly complain of this, if the law gave him the right of appeal where he could secure a full jury trial. But in all courts he is equally entitled " to demand the cause and nature of his accusation, to be confronted with the witnesses ; to call for witnesses in his

favor; nor can he be compelled to give evidence against himself." In the present case, it is true, the accused is not compelled to give evidence against himself, but the same result is attained, by dispensing with all evidence of guilt. And instead of having the witnesses confront the accused, or submit to cross examination, or even the officer return the facts and circumstances of the case, he returns at once, and in gross, that they are sufficient to justify an inference of guilt, a form in which no witness could be allowed to testify. The whole proceeding is a deliberate, but I doubt not, unconscious defiance of the ordinary mode of trial. It is one, therefore, which I think, no court can or ought to justify. It is in my opinion altogether without parallel, in the history of jurisprudence in free states, unless something of the kind exists in similar statutes in other states, and of no practical benefit, but rather detrimental in its operation, and one that it was both creditable and prudent to abandon, at the earliest moment, as the legislature did.

It is noticeable in this case too, that the defence consists of a direct negative, and in matter of intention merely, and without the court being made aware of the particular facts of which the respondent is accused, which certainly puts one at very great disadvantage.

It should be borne in mind too, in attempting to vindicate such a provision, in regard to the mode of trial, that if it can be applied to one offence it may be to all, and in times of tyranny and oppression, no mode of resort has been more common, than to treat an accusation, by public officers, as evidence of guilt and to demand of the accused proof of innocence; and the complaint and return of the officer is nothing more than an accusation of crime, in the present case, and the accused is then required to prove his innocence, or lose his property and be fined and imprisoned, in default of payment. And it is perfectly competent for the legislature to punish this offence, by imprisonment, or confiscation of goods, or public infamy, or even by the extreme penalty of the law, if they should ever deem it expedient, and the fact that they never have and probably never will do this, if they have the power to do it, is no reason why we should justify a mode of trial in one case of penalty, which we could not in all.

In these matters above all others, the maxim *insta principiis* is of striking application. In all abuses of authority there is no

return, *nulla vestigia retrorsum*, and it always begins in a good cause, in defence of religion, or morality, or public decorum, or order, or decency.   The former objections which have been urged against this statute have been chiefly in matters of form, and many of them captious and frivolous, but this is of the very essence of the trial. It is in short, whether the accused is entitled to any trial.   Suppose the party declines as he may, to adduce any proof, is he not by the very terms of the statute, to be convicted without any proof, upon either side ?   And if he may thus be convicted of one offence, may he not in like manner be convicted of all or any offences ?   What then becomes of the liberties of a free state ?

It should, I think too, be borne in mind, that the legislature have not declared all liquors contraband, or nuisances, as being unworthy the protection of law, as they undoubtedly may do of any species of property, and if they do so, any one may destroy it, at will, and without warrant, or trial, or remedy.   But the general *status* of liquor under the present law is that of property.   It is only declared forfeited under one contingency.   This therefore is a penalty, and as such is to be made out, by proof, upon trial, like any other forfeiture.   It is as much a penalty or forfeiture, as the penalty, *in personam*.   And in the United States courts where goods seized under the revenue laws, are condemned unless the claimant make out a case, and where spirits in the Indian territory, have been similarly condemned, it is never done except upon proof, in court, by witnesses, of the circumstances, under which the seizure is made, in the first instance.   And under the present statute, I learn from the most cautious officers and counsel in the state, that in practice the officer or others, as was done in the present case, are first called to prove the circumstances under which the liquor was found.   But this not being required by the statute will not make the proceeding valid.   The inquiry is, whether the requirements of the statute, in creating the forfeiture, are constitutional and legal so that they can properly be exercised by the courts. And in the present case, I trust I have sufficiently shown, what to my mind, are insuperable difficulties.

The judgment of the court is that the respondent take nothing by his exceptions or motion in arrest.