J. M. Dupree et al. v. State of Texas.

No. 1938. Decided May 19, 1909.

**1.—Intoxicating Liquors—Constitution—Legislative Power—Preventive Measures.**

Article 16, section 20, of the Constitution, in providing for prohibition of sales of intoxicating liquors under the Local Option Law has committed to the Legislature the enactment of laws for enforcing such prohibition; it has not limited their power to the punishment of the unlawful sale; they may adopt such preventive measures also as are not forbidden by the Constitution. (Pp. 459-461).

**2.—Same—Search Warrant—Probable Cause—Affidavit of Belief.**

The question of the validity of the law requiring a search warrant for intoxicating liquors, etc., kept for unlawful sale to issue on the affidavit of mere belief by a credible person, the Constitution requiring that probable cause for such issuance be shown under oath, discussed and the authorities reviewed. (Act of April 5, 1907, Laws, 30th Leg., p. 157; Const., art. 1, sec. 9.) (Pp. 463-466).

**3.—Search Warrant—Other Places.**

The law authorizing, under a search warrant issued on affidavit describing only the place to be searched, the search also of "any place" where the "affiant" has good reason to believe any such person has placed or secreted any such liquor, thus leaving the places to be searched under the warrant to the determination of the person who had made the complaint, and requiring the seizure of all liquors whether kept for unlawful sale or not, is in violation of the constitutional requirements forbidding a warrant to search a place not described in it and requiring a description "as near as may be" of the article to be searched for (Const., art. 1, sec. 10). (Pp. 466, 470.)

**4.—Unconstitutional Law—Separating Valid Parts of Act.**

The unconstitutional features of the law providing for search of places for discovery of intoxicating liquors are so blended with its valid provisions as to be inseparable and to invalidate the whole act so far as relates to search of places. (P. 467).

**5.—Search and Seizure—Valuation of Property.**

The law for search and seizure of intoxicating liquors is invalid in that it makes the value placed on the property by the officer seizing it conclusive of the amount of the claimant's liability, conferring a judicial power on that officer, who is also interested in the amount of the forfeiture. (Pp. 470, 471.)

**6.—Bond—Common Law.**

The replevin bond given by one whose property is taken under the law for search and seizure of intoxicating liquors can not be sustained as a common law obligation, being not voluntary, but extorted by the taking of his property under an invalid law. (P. 471).

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Brown County.

*C. N. Harrison* and *J. W. Wayman,* for appellants.—The Act of the Legislature, approved April 5, 1907, upon which the proceedings in this case are predicated, and especially section 2 thereof, are unconstitutional, because in contravention of section 9 of the Bill of Rights of the State of Texas, in this: that they authorize and command the issuance of search warrants without any showing of probable cause, supported by oath or affirmation, as is required by said section 9 of the Bill of Rights; and transfer the jurisdiction to try the question of probable cause from the officer who issues the writ to the affiant upon whose affidavit it is issued. Constitution of Texas, art. 1, sec. 9; Lippman v. People, 175 Ill., 101; Reighister v. McGahey, 1 Am. & Eng. Annot. Cases, 650; 25 Am. & Eng. Ency. of Law, 147-148; In re Dana, 68 Fed., 894; Phelps v. McAdoe, 94 N. Y. S., 265; Cooley's Const. Lim. (6th ed.), 367-368.

Section 9 of the Bill of Rights requiring as a safeguard of liberty and property that the "probable cause" which must be shown as a condition precedent to the issuance of a search warrant, shall be "supported by oath or affirmation," any law reducing what shall be shown and sworn to procure such a warrant to a formula upon which perjury can not be practically assigned and maintained, contravenes said section of the Bill of Rights, provides for unreasonable searches and seizures, and destroys the protection afforded by said section 9, to the citizens and must be held unconstitutional and void. Commonwealth v. Bray, 96 S. W., 522; State v. Henderson, 92 Ind., 406.

It is a fundamental rule of law relative to search warrants, preserved inviolate by the provision in section 9 of the Bill of Rights that "no warrant to search any place, or seize any person or thing shall issue, without describing them as near as may be." Therefore, any legislative enactment which, in effect, dispenses with such description as to any part of the property therein authorized to be seized, or which leaves it discretionary with the officer to determine whether he will or will not seize property under such warrant, ac-

cording as he shall adjudge the use being made or intended to be made of such property, is not only unconstitutional and void for the reasons already stated, but because such a law authorizes unreasonable seizures and searches within the meaning of section 9 of the Bill of Rights. Constitution of Texas, art. 1, sec. 9; Reed v. Rice, 19 Am. Dec., 122; Meyers v. State, 105 S. W., 48; Moody v. McKinney, 53 S. E., 543.

The Act of April 5, 1907, and especially section 2 thereof, is in contravention of section 9 of the Bill of Rights and of the provision therein contained forbidding unreasonable searches and seizures, in this: that upon the affidavit therein required, the magistrate is commanded to issue a search warrant directing the officer to whom it is delivered to search the place, room or building therein described and search for and seize any intoxicating liquor found there, whether the particular liquor seized is being sold, or kept or possessed for the purpose of being sold, in violation of law, or not; and without requiring either the affidavit or search warrant to name or describe the person using such place, room or building for the forbidden purpose, or who is keeping or possessing intoxicating liquors there with intent to sell the same in violation of law; and without reference to whether the owner of the liquor found in such place and seized, knew or believed that such place was being so used, or that intoxicating liquor was being kept there for the forbidden purpose or not; but under said Act all intoxicating liquor belonging to all persons whomsoever found in such place shall be seized and condemned, however innocent the owner thereof may be of participating in or possessing a knowledge of the facts upon which such seizure rests. Same authorities.

Any legislative enactment which authorizes the search for and seizure and detention of personal property belonging to citizens of this State, and which provides for trial of the right to seize and hold only at regular terms of the courts, and incumbers the right to replevy or repossess by unusual burdens and penalties unknown to the law of this State in any other like proceeding to replevy property in custodia legis, and which excludes the right of judicial ascertainment of the value of the property seized, when process of replevin is resorted to, but renders the person resorting thereto liable to pay, in the case of condemnation, such a sum as the sheriff may assess the property to be worth, regardless of its actual value, and provides no means of repossessing the property except by replevy, and makes no provision for indemnity against the loss of the value of the use of the property while held by the officer, nor for indemnity for the loss or destruction of property while in his hands, provides for and authorizes unreasonable searches and seizures within the meaning of section 9 of the Bill of Rights, and contravenes the other provisions of the Constitution referred to in the second paragraph of the motion to quash and answer, and is, therefore, unconstitutional and void. Bill of Rights, sec. 9; Cooley's Const. Lim., 369; Grigsby v. Peak, 57 Texas, 148; McFadden v. Longham, 58 Texas, 585.

It is clear from the provisions in the Act of April 5, 1907, that it is intended to be operative only in such counties, justice precincts,

towns, cities and subdivisions of counties as have forbidden the sale of intoxicating liquors under what is commonly known as the local option law, and under art. 16, sec. 20, of the Constitution, under which said local option law was enacted, as said section has been construed by the Court of Criminal Appeals of Texas, the Legislature has no constitutional authority to do more than forbid the executed contract of sale of intoxicating liquor in local option territory, whilst the Act in question gives to the unexecuted intent to make such sales the effect, ipso facto, of rendering any place, room or building, used for the purpose of effecting such intent, and all intoxicating liquors kept or possessed there with such intent, a nuisance, and making them subject to condemnation and forfeiture, and makes all other liquors found in such place subject to seizure under the search warrant provided for by said Act, and said Act is therefore unconstitutional and void. Constitution of Texas, art. 16, sec. 20; Keller v. State, 87 S. W., 669, 676; James v. State, 45 Texas Crim. Rep., 592; Ex parte Brown, 38 Texas Crim. Rep., 295; Holley v. State, 14 Texas Crim. App., 505; Stallworth v. State, 16 Texas Crim. App., 345; Steele v. State, 19 Texas Crim. App., 425; Ninenger v. State, 25 Texas Crim. App., 449; Ex parte Massey, 49 Texas Crim. Rep., 60; Murdock v. State, 52 Texas Crim. Rep., 262.

*Robert V. Davidson,* Attorney-General, and *Jas. D. Walthall,* Assistant, for appellee.—The police power, which is exclusively in the State, is alone competent to the correction of the great evils having their origin in the use and abuse of ardent spirits, and the sources of restraint or prohibition necessary to effect the purpose are within the scope of that authority. Beavers v. Goodwin, 90 S. W., 930; License Cases, 5 Howard, 504; State v. Fitzpatrick, 16 R. I., 54; State v. Miller, 48 Maine, 576; Gray v. Kimball, 42 Maine, 299; Gill v. Parker, 31 Vermont, 610; Black on Intox. Liq., secs. 33, 34, 51, 52; Met. Board of Excises v. Barrie, 34 N. Y., 657; Mugler v. Kansas, 123 U. S., 623; In re Horgan's Liquors, 16 R. I., 542.

While statutes authorizing searches for and seizures of liquors possessed in violation of law, to be valid, must conform to the requirements of the Constitution controlling searches and seizures generally, it is not necessary for their validity that they should contain a recital of the conditions or restrictions in the Constitution as to the issuance of such warrants. In many jurisdictions statutes have been upheld authorizing officers to seize intoxicating liquors without a warrant in any case where they might seize such liquors under a warrant. Ring v. Nichols, 91 Me., 478; Weston v. Carr, 71 Me., 356; Jones v. Root, 6 Gray (Mass.), 435; State v. O'Neil, 58 Vt., 140; State v. Brennan's Liquors, 25 Conn., 278; Lemp v. Fullerton, 83 Iowa, 192; Santo v. State, 2 Iowa, 165, 63 Am. Dec., 487; Mason v. Lothrop, 7 Gray (Mass.), 354.

The provisions of section 20 of article 16 of the Constitution authorize the people to inhibit the sale in local option territory. The Act under consideration is not a local option law, nor an amendment to that law, nor an infringement of it. It is not an assault on the local option law, but it is outside of the law, and was enacted for the pur-

pose of rendering more effective said local option law. Ex parte Dupree, 105 S. W., 492; Ex parte Massey, 49 Texas Crim. Rep., 60; Snearly v. The State, 40 Texas Crim. Rep., 507.

It has been held in many States that laws declaring that all buildings, places or tenements used for the illegal sale or keeping of intoxicating liquors shall be deemed common nuisances and treated as such are constitutional and valid. Mugler v. Kansas, 123 U. S., 623; Comm. v. Howe, 13 Gray, 26; Streeter v. People, 69 Ill., 593; Our House v. State, 4 Greene (Iowa), 172; Littleton v. Fritz, 65 Iowa, 488; State v. Crawford, 28 Kan., 726.

And so a statute which authorizes proceedings in chancery to abate a nuisance consisting of a place maintained for the unlawful sale of liquors, is valid; and it is not unconstitutional as depriving the guilty person of his property without due process of law, for the proper and orderly proceedings of a court of chancery are "due process of law" within the meaning of the constitutional guaranty. State v. Jordan, 72 Iowa, 377; Carleton v. Rugg, 149 Mass., 550.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

The questions in this case are presented by a certificate from the Court of Civil Appeals for the Third District and involve the constitutionality of those provisions of the Act of the Legislature approved April 5, 1907, which authorize the issuance of warrants to search places wherein intoxicating liquors are kept for sale in violation of law, and the seizure and confiscation of the liquors and other property mentioned in the statute.

The certificate shows that a warrant was sued out to search a place named in it; that liquors were seized under it and replevied by Dupree; that the prescribed steps were afterwards taken, resulting in a judgment in favor of the State against appellant for the amount named in the replevy bond and that all of the proceedings were conducted in substantial compliance with the statute. The questions stated in the certificate for decision are as follows: (1) Are the provisions of the Act in sections 2 to 9, inclusive, in conflict with sections 9 and 19 of the Bill of Rights, and, if so (2), may a recovery nevertheless be had on the replevy bond as a common law obligation?

The certificate states only the question as to a conflict between the sections of the Constitution named in it and the statute, and, at first blush, would seem not to raise some of the questions discussed by counsel for appellants under section 20 of article 16. But as section 19 of the Bill of Rights forbids the taking of the property of the citizen except by due course of law, and as there is no law which authorizes such a taking as that here in question unless this statute be such, if that statute for any reason should be held void it would follow that the taking was without due course of law. Hence, the certificate authorizes us to consider the objections urged against the statute under the other provision.

The contention that would go farthest in its consequences, if sustained, is that by section 20 of article 16 the Legislature is deprived of any power it might have, in the absence of such a provision, to

pass a law like that in question to make it unlawful merely to keep intoxicating liquors for the purpose of selling them in violation of law and to confiscate them when they are found to be so kept. This contention is based upon the construction of that provision by which it is treated as an affirmative delimitation of the power which the Legislature may exercise in the prohibition of the use of intoxicating liquor, defining the extent of that power, and operating, by implication, as a denial of any other prohibitory power than that expressly granted. That theory of construction is stated and applied in the case of Holley v. The State, 14 Texas Crim. App., 505, and in many subsequent decisions of the Court of Criminal Appeals, which are based upon a well known rule for the construction of Constitutions. It is unnecessary to enter into any discussion of it here. The power affirmatively granted by the Constitution and fully recognized in those decisions is that to prohibit, through the prescribed procedure, the sale of intoxicating liquor, and that is all this statute seeks to accomplish. It deals with nothing except the keeping of liquors for the purpose of sale. The proposition that only *sales* may be *prohibited* has sometimes been thought to imply the further one that the prohibition can only be enforced by denouncing and punishing as an offense the completed sale. This restricts the power granted within too narrow limits, as we had occasion to hold in Ex parte Dupree, 105 S. W., 492. The purpose of the prohibition is to prevent the thing prohibited, and this provision of the Constitution prescribes no scheme of legislation by which that is to be done, but leaves the choice of the methods to the law making power. There is nothing whatever in the provision which, in our opinion, should be construed as denying the power to prevent the sales which are prohibited by any legitimate remedies appropriate to that end. Prevention of crime is one of the objects to which the most anxious thoughts and the most constant efforts of thoughtful legislators are directed, and the dealing with the steps preparatory to commission is a favorite method. Our codes are full of instances of this, too numerous and too familiar to need citation.

It is unnecessary, in view of the extensive discussion which the application of this principle in prohibitory legislation has occasioned in other States, that we should enlarge upon it at any length. From the many expressions of it we quote that of Chief Justice Shaw, of Massachusetts, in the case of Fisher v. McGirr, 61 Am. Dec., 381, an authority upon which appellants so strongly rely to support some of their other contentions: "We think it manifest that the Legislature, in this system of measures, proposes to accomplish one and the same object, by two distinct modes of proceeding. The general is to prevent or diminish the evils of intemperance, by the punishment of an indiscriminate sale of spirituous liquors; but the particular purpose in this series of measures is to prevent such liquors from being kept in any place, by any person, for the purpose or with the intent that they shall be sold. Although crimes and offenses punishable by law consist in acts done, and not in mere unexecuted purposes and intentions, yet the more effectually to accomplish the great and salutary purpose of laws necessary to the well being of

society, acts and conduct which would be innocent or indifferent in themselves are often declared unlawful, and made punishable, if done with an intent and purpose which will render them noxious or dangerous, and where, should the law wait till the criminal intent is carried out into action, irremediable mischief will be done. The law is preventive as well as remedial. Thus a person may innocently have in his possession counterfeit coin or bank notes. But if he has them in his possession with intent to pass them as true, knowing them to be counterfeit, the intention qualifies the act, and such act may be justly made punishable. This is the foundation of many criminal enactments. The principal is too familiar to require extended illustration."

It is conceded by practically all of the authorities to be within the power of Legislatures, untrammelled by such constitutional provisions as ours, to enforce their prohibition of the sale of intoxicating liquors by arresting the preparation for such sales and forfeiting and destroying the liquors kept and intended to be sold in violation of law. But our Constitution fully and unconditionally authorizes the prohibition of sales in that territory in which the voters, in accordance with the law submitting the question to them, have determined that such sales shall be prohibited, and leaves the Legislature unhampered as to the means and methods by which the prohibition may be made effectual. When that upon which the power to prohibit is conditioned, i. e. the decision of the voters in the authorized subdivisions, has taken place, the power of the Legislature to adopt laws to enforce the prohibition, so far as this provision of the Constitution affects it, is as complete as such a power is anywhere. So no reason is found in this provision to prevent the adoption of such measures of prevention as are everywhere recognized as being within the proper sphere of legislative power. Of course such measures must conform to the limitations upon legislative action found in other parts of the Constitution, as must all laws touching the person and the property of the citizen; and this brings us to the consideration of objections against the statute based upon the provisions of the bill of rights.

The first section of the Act defines as common nuisances (1) any place, room or building, kept, maintained or used, for the purpose of selling intoxicating liquor in violation of law, in a county, justice precinct, town, city or designated subdivision of a county, in which the sale of intoxicating liquor has been prohibited; (2) any intoxicating liquor kept or possessed for such purpose, whether kept or possessed in such place, room, etc., or elsewhere; (3) certain named classes of things used as aids in keeping and maintaining such place, etc., or such liquor.

The second section is as follows: "Upon affidavit being made by any creditable person of the county, where the proceeding is begun, before the county judge or a justice of the peace of said county, describing the place, room, or building where it is believed by the affiant that intoxicating liquor is being sold in violation of law, or is being kept or possessed for the purpose of being sold in violation of law, or shall name or describe if the name is unknown, any per-

son who has, keeps or possesses any intoxicating liquor for the purpose of sale in violation of law, then and in either event it shall be the duty of such county judge or justice of the peace, as the case may be, to issue a warrant commanding the sheriff or any constable of the county to immediately search such place, room or building, describing the same, or such person, giving name or description, and it shall be the duty of said officer to whom said warrant is delivered by the county judge or justice of the peace to immediately search such place, room, or building or such person, and if refused admission into any such place, room, or building or into any place, room, or building where the *affiant* has good reason to believe any such person has placed or secreted any such liquor, then, and in such event, the officer executing such warrant shall be and is hereby authorized to force an entrance to any such place, room or building, using such force as may be necessary for that purpose, and he shall search for and seize any intoxicating liquor found in such place, room or building or in the possession or under the control of such person named or described in said warrant, and shall also seize all signs, screens, bars, bottles, glasses, furniture, tools, appliances or other articles or things used in keeping or maintaining such place, or used in any manner as an aid to the unlawful sale of intoxicating liquor; and after seizure he shall make an accurate inventory of everything seized, stating therein the estimated value of each item, and shall securely keep the same until replevied or otherwise disposed of under the provisions of this Act." We copy the section from the enrolled bill in the office of the Secretary of State from which the published copy varies in some particulars not very material.

The third section prescribes the requisites of the search warrant, the command to the officer being that he shall search the place, room, premises, building or any part thereof, or the person named in the complaint, specifying in general terms the things to be searched for and seized.

The fourth section authorizes the replevy of the property seized by the owner of it, or of any part of it, or by the person in whose possession or under whose control it was when seized, by giving bond in an amount equal to the value of the property replevied as fixed on the inventory by the sheriff, conditioned "that should said property in said action be condemned as a nuisance, the obligors in such bond will pay to the State of Texas the amount thereof, being the value of the property replevied as fixed by said officer, and all costs, including 15 percent additional on said amount as a fee to the county or district attorney who discharges such duty for the State, and 10 percent on the amount thereof for the sheriff or constable."

Section 5 requires a return of the writ to the officer who issued it within fifteen days, or in case of seizure, within five days, showing a list of articles seized, the value fixed on them, the replevy bond or bonds, if any, or, if the property had not been replevied, the name and residence of the owner or owners, or, if no one is known to be the owner, the name and residence of the person in whose possession or under whose control the liquor was when seized. This section further provides, upon such return being made, for the docketing

of the cause in the court having jurisdiction of the amount involved, with the State as plaintiff, and the principal in the replevy bond, or, if there be none, the owner or person found in possession, as defendant. Provision is also made in this section for the procedure when several claims are asserted to the property.

The statute further provides for service of a prescribed notice on the defendant as citations are served in civil causes, for proceedings in the cause as in other civil cases, except that several provisions are made for the purpose of securing the speedy trial and final disposition of the cause. The only issue to be tried is whether or not the property constituted a nuisance, and in case that issue is decided in favor of the State, the judgment is to be for the destruction of the property if not replevied; and in case of replevy, judgment is to go against the principal and sureties on the bond for the full amount thereof, including 15 percent attorney's fee and 10 percent for the sheriff or constable. If the issue be determined in favor of the defendant the judgment restores the property or discharges the replevy bond.

The principal attack is upon the second section of the statute and is based upon the ninth section of the Bill of Rights which declares that "the people shall be secure in their persons, houses, papers and possessions from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation." It is said that the requirement of probable cause supported by oath or affirmation is not met by an oath merely that the informer believes the facts stated. It can not be denied that the statute not only authorizes, but requires the issuance of the writ upon no better showing of cause than an affidavit of belief. If this is not such a showing of probable cause as the Constitution demands, it follows that such searches and seizures as are here required are forbidden. There are authorities of which some directly sustain and others strongly tend to sustain the contention: Lippman v. People, 51 N. E. (Ill.), 872; State v. McGahey, 97 N. W. (North Dak.), 865; State v. Patterson, 99 N. W. (North Dak.), 67; State v. Wager, 83 Ill. App., 592; 20 Fed. Cases, Case No. 12,126. In re Rule of Court: United States v. Tureaud, 20 Fed., 621; Johnson v. United States, 87 Fed., 187; Swart v. Kimball, 43 Mich., 451; People v. Heffron, 53 Mich., 527; Ex parte Dimmig, 74 Cal., 164.

In the case first cited the Supreme Court of Illinois directly holds a statute which requires the issuance of a search warrant upon an affidavit of belief to be violative of the provision of the Bill of Rights which we have quoted. The other authorities cited discuss the sufficiency of affidavits under particular statutes, or under the common law, or else the general question as to the requisites of such oaths forming the basis for the issuance of warrant for searches or for the seizure of persons, and not the question as to the validity of statutes authorizing their issuance upon affidavits of belief or suspicion; but many of them employ language strongly indicative of the same construction of the Bill of Rights as that held by the Illinois

court. At the page cited in 20th Federal Cases is an opinion of Mr. Justice Bradley, of the Supreme Court of the United States, written in establishing a rule of court for the suppression of a practice of the officers of the government whereby, in the language of Judge Bradley, "the personal liberty of the people is unnecessarily interfered with." After stating the practice and the mischiefs resulting from it, which will be recalled by many conversant with the history of those times, this eminent judge says: "After examination of the subject, we have come to the conclusion that such an affidavit does not meet the requirements of the Constitution, which, by the fourth article of the amendments, declares that the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and that no warrants shall issue but upon probable cause, supported by oath or affirmation, describing the place to be searched and the persons to be seized. It is plain from this fundamental enunciation, as well as from the books of authority on criminal matters in the common law, that the probable cause referred to, and which must be supported by oath or affirmation, must be submitted to the committing magistrate himself, and not merely to an official accuser, so that he, the magistrate, may exercise his own judgment on the sufficiency of the ground shown for believing the accused person guilty; and this ground must amount to a probable cause of belief or suspicion of the party's guilt. In other words, the magistrate ought to have before him the oath of the real accuser, presented either in the form of an affidavit, or taken down by himself by personal examination, exhibiting the facts on which the charge is based and on which the belief or suspicion of guilt is founded. The magistrate can then judge for himself, and not trust to the judgment of another, whether sufficient and probable cause exists for issuing a warrant."

That the same views were entertained by Judge Cooley may be seen from his work on Constitutional Limitations (4th ed., 369), and from his opinion in the case in 43 Mich., cited above. These, with the others referred to, constitute a formidable array of authority against the practice of issuing warrants based upon the mere belief of an affiant, when no facts are stated and no opportunity is given to the judicial officer to judge for himself whether or not the belief is grounded on circumstances sufficient to constitute probable cause for the use of such processes. It will be seen that they do not lay down any rule compliance with which will be impossible, or even difficult in practice, such as that warrants can not issue except where the informer has positive knowledge of the facts upon which they are to be based, but that they merely require that the facts from which he has formed his belief shall be stated to the magistrate in the affidavit or deposition, so that he and not the informer shall be the judge whether or not they constitute the probable cause required by the Constitution. When we consider the great diversities in human minds and characters, we have no doubt that this is what the law ought to require when an affiant can not swear from his personal knowledge. By some minds that is readily accepted as sufficient foundation for firm belief which in others generates, at most, only

vague suspicion. In the formation of beliefs and in the readiness to swear to them, men differ to an almost infinite extent according to the constitution of their minds and characters. Some are cautious and scrupulous, others hasty or unscrupulous, sometimes both; and when the affiant's belief is made the only measure of probable cause, there is no fixed standard at all. The theory of the authorities before cited is that the Constitution intends to give a guaranty to the citizen against searches and seizures dependent upon such uncertainties by interposing between him and rash or unscrupulous accusers the judgment of a magistrate chosen by the State. But that view is not the only one that has been taken and practically followed in legislative practice and judicial construction.

Our Code of Criminal Procedure has contained, since the revision of it in 1879, a provision which says that a complaint "shall be deemed sufficient" for the issuance of a warrant for the arrest (seizure) of a person when it states, among other things, that the accused has committed an offense, naming it, "or that the affiant has good reason to believe, and does believe, that the accused has committed such offense." We do not discover that any question has ever been made as to the constitutionality of this latter provision, although complaints following it have repeatedly been held sufficient. Brown v. The State, 11 Texas Crim. App., 451; Clark v. The State, 23 Texas Crim. App., 260; Hall v. The State, 32 Texas Crim. Rep., 594; Anderson v. The State, 34 Texas Crim. Rep., 96; Smith v. The State, 45 Texas Crim. Rep., 251. Probably the large majority of warrants of this kind, for almost thirty years, have been issued as a matter of course upon complaints using this language.

The provisions of the same Code concerning the issuance of the search warrants therein provided for are not of such easy construction, but some of them recognize the sufficiency of complaints stating the affiant's belief of at least some of the facts. All of these provisions seem to require the issuance of the warrants as a matter of course upon the filing of the required complaints, and none of them express the idea that the magistrate, when the prescribed statements have been made, shall pass upon the question as to their sufficiency to show probable cause. No question of the kind seems ever to have been made concerning them. In other States the same kind of legislation seems to have been common. In Lowrey v. Gridley, 30 Conn., 450, and State v. Davie, 62 Wis., 305, the sufficiency of such affidavit to comply with the Constitution is directly affirmed. In Maine and Vermont, and probably in other States, the same view has been repeatedly acted upon. State v. Welch, 79 Me., 104; State v. Nowlan, 64 Me., 531; Lincoln v. Smith, 27 Vt., 329; State v. Prescott, 27 Vt., 194.

Massachusetts decisions are cited as announcing the same doctrine, but the statutes of that State seem to have required the complaint to be so shaped as to submit the question of probable cause to the magistrate, and the decisions in that State may not conflict with those authorities first mentioned. In the case of Commonwealth v. Certain Lottery Tickets, 5 Cush., 369, the course at common law

is said to have been for an affiant seeking a search warrant to swear that he "has reasonable cause to suspect," etc. In the case of Elsee v. Smith, 1 D. & R., 97, the judges of the King's Bench declared that a justice of the peace might lawfully issue a search warrant upon affidavit of belief; but such authorities as the two last probably assume, which sems to be the truth, that at common law it was left to the magistrate to determine whether or not the complaint, however worded, presented probable cause. Some of our statutes, particularly that in question, as well as those of many other States, leave him no such discretion, but require him to issue the writ upon the making of an affidavit containing the prescribed statements. The Legislature has thus, in effect, determined that such oaths, in themselves, show probable cause, and we are confronted by the question whether or not it had power to do this. It is obviously true that the Legislature can not dispense with the requirement of the Constitution that probable cause be shown, and that, therefore, it can not evade this limitation upon its power by an attempt to make that probable cause which plainly is not such. But have we such a case? In determining a question like this we must take into consideration the history of the subject and what has been regarded as probable cause and when we find that that which the Legislature has, in this instance, treated as being sufficient has been thus long and extensively so regarded here and elsewhere by both legislative and judicial authority, it would be difficult to say that there is such a plain and palpable violation of the Constitution as to justify the courts in declaring the statute void, and if this were the only objection to the Act in question we should hesitate long before reaching such a conclusion. It is unnecessary that we do so. There are other objections which we feel compelled, by our view of the Constitution, to regard as fatal to the statute and we proceed to the consideration of them.

The most that the Act can be held to require as a basis for the issuance of the search warrant is that it describe a place where the affiant believes "intoxicating liquor" is being sold, or is being kept or possessed for the purpose of being sold, in violation of law. We speak only of those provisions intended to allow searches of places, no question being involved as to the search of the person. Neither the giving of the name or the description of any person, nor of any further description of the thing or things to be seized is required. Upon this and no more the Act requires the magistrate to issue the warrant. The writ is made to confer authority upon the sheriff or constable to enter and search not only "such place," etc., that is, the place which has been described in the affidavit, but "any place," etc., where the "affiant" has good reason to believe any such person has placed or secreted any such liquor. This is so apparent a contradiction of the Bill of Rights that the point of conflict scarcely needs to be pointed out. The Bill of Rights forbids the issuance of any warrant to search "any place" . . . . without describing it. Upon a complaint and a warrant describing a place or places, the statute attempts to authorize the search of other places not described. The places thus subjected are any in which the affiant, the person who has made the complaint, believes any such liquor

has been placed or secreted. It is not required that he should have described them in his affidavit, nor that they be described in the warrant. The significance of this is that, in the practice followed in the execution of such warrants, the complainant has always been expected to accompany the officer for the purpose of assisting in the identification of the property to be seized; and under such a provision as this he is empowered to determine upon his mere belief, not even previously sworn to, what places in addition to those described in his affidavit shall be entered and searched. This is the meaning of the language as it is written. It may be due to faulty expression, for we are reluctant to assume that any such thing was really purposed by the Legislature; but the courts can not reconstruct laws nor strain their language from its obvious meaning, imputing to it one contrary to that which it plainly expresses, in order to harmonize them with the Constitution. To that extent no court can properly go. Although it is true that of two constructions of which a statute may be susceptible, that which will conform it to the Constitution and make it valid is to be preferred, this rule can never justify the striking out of provisions which the statute contains, nor the insertion of others which it does not contain. Sometimes an unconstitutional provision in a statute is so separated from others that its vice does not pervade the entire law so as to invalidate the whole. An instance is found in this statute. Those parts which provide the remedy of injunction are so separated from those concerning searches and seizures that in Ex parte Dupree, supra, the constitutionality of the former was held not to be affected by the latter. But this view can not be applied here. The entire proceeding to search places rests upon the warrant issued under the second section of the Act, and every search warrant is made to carry with it the unconstitutional power which we have pointed out. We can not by construction strip the writ of its vicious features without cutting out of the statute one of its express and positive provisions. It is true that section 3 of the Act says that the writ shall command the search to be made of the place named in the complaint, and if this were all, the statute might not be subject to the objection which we are now considering; but the provision quoted from section 2 gives to a warrant worded in accordance with section 3 the effect of authorizing the searching of other places than the one named. The power sought to be given by the writ is therefore the same as if the provisions of section 2 were written in it; and thus the places to be searched are left to the determination of the person who has made the complaint. Should the courts undertake to eliminate that provision and leave the authority to be such only as the Constitution authorizes, officers, in executing such warrants, would either fall into a trap set for them by the statute, or follow a law prescribed by the courts and not by the Legislature; and this shows the impropriety of any such action on our part. It follows that all the provisions authorizing the search of places and the seizure incident to such a search and all others dependent on them must be treated as not having the force of law. This disposes of the case and we might stop here, but there are other

·objections to the statute which are as well worthy of discussion as those already considered.

We have noted the fact that the statute requires neither the giving of the name or description of the owner, keeper, or possessor of the liquor, nor any description of the liquor itself, other than that it is intoxicating liquor intended for sale in violation of law. We have also seen that the Constitution requires that the thing to be seized shall be described "as near as may be." The purpose of this is to define and limit "as near as may be" the power of officers to invade the premises of the citizen by a specification of that which he may search for and seize. It is not intended to prohibit reasonable searches and seizures nor to prescribe a test which shall make impracticable the legitimate use of the search warrant. Hence the phrase "as near as may be." Descriptions must necessarily vary according to the nature of the things on which the process is to operate, but it can not be admitted that all description is to be dispensed with to meet the necessities of cases; for if in any case the alternative is presented between abstention from the use of this process and a disregard of the Constitution, who will say that the Constitution must yield? It is believed, however, that it will not often be found that where reasonable ground for a search warrant is really known to an affiant, compliance with the Constitution, interpreted according to its spirit, is impracticable. The purpose being only to put proper restrictions upon the power to be given by the process, no very precise or technically accurate description is required. In this the authorities agree. Does this statute require that, in this way, any limitation whatever be put upon the officer? In the first place, it seems to require less than the Constitution requires, in that it says that the writ *shall* "specify in general terms the things to be searched for and seized" instead of leaving it to the complainant and the magistrate to see that such things be described "as near as may be," according to the circumstances of the case, as commanded by the Constitution. This, of itself, raises a serious question, but we pass it. That which is to be searched for and seized is intoxicating liquor. If all intoxicating liquors were so under the ban of the law that they could be seized and confiscated wherever found and for whatever purpose kept, the mere designation of them as such might be a sufficient description of things which might be so seized. But this is not their status under the law. The mere ownership and possession of them is lawful; the ownership of them for the purpose of sale may be lawful anywhere in the State—even in local option territory, since sales for prescribed purposes are permitted in such territory. It is only where they are being sold or kept for the purpose of sale in particular localities and in violation of the law there prevailing that they are made subject to such seizures as this statute authorizes. Hence, the things to be seized, and therefore to be described, are such liquors as are so kept. The statute requires that upon an affidavit merely that intoxicating liquors are being sold or kept for sale in a described place in violation of law, a warrant shall issue under which it shall be the duty of the officer to seize all intoxicating liquors found in that or any other place where the affiant

believes them to be kept or secreted. The writ is not even to be confined in its operation to liquors owned or kept by any named or described person. It is to be, in its effect, what Chief Justice Shaw, in the case of Fisher v. McGirr, before referred to, declared the warrant in that case to be a general warranty for the seizure of intoxicating liquors. That this feature of the statute is in contravention of the Constitution is clearly shown by that opinion. Insofar as our statute does not confine the writ to the place described in the affidavit, it is more obnoxious to this objection than the Massachusetts statute held to be unconstitutional in Fisher v. McGirr.

The statute held to be unconstitutional in that case, upon a complaint that intoxicating liquors were kept for sale in violation of law in any place described therein, authorized the seizure of all intoxicating liquors and not merely those kept for the unlawful purpose. This was one of the features of the statute wherein it was held to conflict with the Constitution. The obvious reason is that in some places, such as warehouses, depots, cars, steamboats, and the like, where such liquors might be kept and employed in violating law by some person or persons, others might be owned or kept for purposes perfectly lawful, and between the two classes the statute made no discrimination. Our statute is not only open to this objection, but to the further one that it authorizes the seizure, without discrimination, of all intoxicating liquors in places other than that described.

That our reference to the absence of the name or description of the owner or keeper of the liquor may not be misunderstood we add that we do not mean to say that that would be indispensable in proceedings, otherwise good, seeking only to reach the liquors themselves. That circumstance is referred to in connection with the absence of description and of everything by which the writ might be limited to liquors properly seizable under it. We are not prepared to hold that it is not in the power of the Legislature to so provide that seizures may be made of liquors unlawfully kept, in a proceeding *in rem*, without naming therein any person as owner or keeper. It is often so held and we express no dissent from the proposition. But when we come to the question of so describing that which is to be seized that the officer and the complainant may not be constituted the only judges, after the writ has issued, of what shall be seized, the designation in the proceedings of the owner or keeper may often be made a circumstance to aid in the identification of the property and a restriction of the writ to its proper office.

In the cases of The State v. Robinson, 33 Maine, 568, and Lincoln v. Smith, 27 Vt., 329, the courts in considering the question of the description of the liquors, say that the name of the owner is no part of a description. We concede that it is not an essential part of a description otherwise sufficient; but to say that it may not be a help to identification is to lose sight of facts of common experience. The Vermont court itself correctly held to be sufficient the description of the *place* to be searched only as the dwelling of a named owner. That is a kind of description often met with in legal documents. If we speak of A's horse, when he has but one, the animal meant

may easily be identified. This would not often be so true if we should say "the intoxicating liquors owned or kept by A." But if A has a stock or lot of liquors and with them is engaged in the business of selling in violation of law at a particular place it would generally not be difficult, by stating in a complaint the facts of the case, to lay a basis for the seizure of all the liquors therein, or of such as were so kept by A. And in other cases that might arise an affiant really having knowledge or information sufficient to justify the proceeding could generally state facts to enable the magistrate, in issuing the writ, to designate the property, not so certainly, to be sure, as to prevent the possibility of mistake, but in such way as to circumscribe the executive officer's power as intended by the Constitution, and not to leave the writ open to the objection that, in effect, it is a general warrant for the seizure of all intoxicating liquor. We say this much to illustrate that the Constitution requires no impracticable thing; but we can not too strongly emphasize that if a warrant can not be obtained because of the impracticability of complying with the Constitution, its imperious command is, "No warrant shall issue." The discussion of the sufficiency of descriptions of property in such warrants will be found in the following cases besides those before mentioned in Maine and Vermont. Com. v. Certain Intoxicating Liquors, 97 Mass., 63; Downing v. Porter, 8 Gray, 541; Com. v. Intoxicating Liquors, 110 Mass., 416; Com. v. Intoxicating Liquors, 13 Allen, 52; Sanford v. Nichols, 7 Am. Dec., 153; Frost v. The People, 86 Am. St., 355; Mallett v. Stevenson, 26 Conn. 428; State v. Brennan's Liquors, 25 Conn., 278; State v. Lager Beer, 70 N. H., 454. Others might be cited, but these will show that the courts, in determining the sufficiency of descriptions under statutes, have been extremely liberal. The cases cited from Maine and Vermont seem to hold broadly that the designation of the thing to be seized as "intoxicating liquors" without name of owner or other circumstance is a sufficient compliance with the Constitution. We have found no other authority going so far and we are not prepared to agree to so broad a proposition. But it is enough to hold now that this statute, giving the almost unlimited authority which we have shown to be contained in it, with no effort to describe the things to be seized, can not be reconciled with that provision of the Constitution which requires such things to be described "as near as may be." If the provisions of the statute conformed to that requirement, it would then be for the parties and the courts to determine, in cases as they arose, what descriptions would be sufficient under each set of circumstances. But the statute, by its own words, exacts less than the Constitution exacts as the conditions upon which the writ is to issue. To follow the former is to disregard the latter.

Still another feature of the statute which can not stand is that which makes the obligors in the replevy bond absolutely responsible for the value put by the officer upon the property seized. The provisions are so constructed that the defendants have no hearing upon the question of value, but, in case the only issue upon which they are to be heard, that is, nuisance *vel non*, is decided against them, the valuation made by the sheriff, with the percentages allowed to

him and the prosecuting attorney, besides court costs, constitute absolutely the amount to be adjudged against them. The provision is not like those for the valuation by the sheriff of property seized under other writs, in which the question of value may finally be tried by the court or jury and a judgment entered according to the finding. The sheriff's valuation concludes all inquiry. It seems plain that this confers upon him judicial power—power which belongs only to the courts. It is objectionable further because it, and not the law itself, thus fixes the amount of the penalty or forfeiture to be declared, and at the same time gives him an interest in the amount of it. That such power can not be conferred upon such an officer is clear. McFadden v. Longham, 58 Texas, 586.

Many other objections are urged against the statute. They will not be discussed further than as they may be involved in what we have written. They have pointed out nothing else in which, so far as we can now see, the statute conflicts with the Constitution.

The first question certified is answered in the affirmative, and the second in the negative. The legal effect of the replevy bond and liability upon it depend entirely on the statute providing for the seizure and must fall with those provisions. It can not be considered a good contract under the common law, because it was not voluntarily entered into, but was extorted by an unlawful seizure, and for the further reason that there is no such liability as it expresses outside the statute itself, which we have held to be void in those parts attempting to create such a liability.