Roy Chapin v. The State.

No. 10670.　Delivered June 22, 1927.

1.—Possessing Intoxicating Liquor—Search of Dwelling—Affidavit for Warrant—Requisites Of.

The search of a private dwelling, occupied as such, for contraband property, such as intoxicating liquor, cannot be made without a search warrant, legally issued. See Bill of Rights, Art. 1, Sec. 9, Constitution of Texas, and cases cited in this opinion.

**2.—Same—Continued.**

To authorize the issuance of such search warrant, "probable cause" must exist for making such search. By probable cause is meant that there must be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged. See Landa v. Obert, 45 Texas Rep. 539, and other cases cited.

**3.—Same—Continued.**

Belief alone is not probable cause. The law requiring the showing of probable cause intends that evidence shall be given of such facts as shall satisfy the magistrate that the suspicion is well founded. Battle v. State, 290 S. W. 63; Carroll v. U. S., 267 U. S. 132, and other cases cited. Cooley's Constitutional Limitations, 6th Ed., p. 368.

**4.—Same—Continued.**

The mere averment in the affidavit for a search warrant of affiant's belief thereto, is not sufficient, the affidavit must set out the facts in the possession of affiants, to authorize the issuance of the search warrant. See concurring opinion of Judge Hawkins, and dissenting opinion of Judge Lattimore.

Appeal from the District Court of Shackelford County. Tried below before the Hon. W. R. Ely, Judge.

Appeal from a conviction for the possession of intoxicating liquor for the purpose of sale, penalty one year in the penitentiary.

The opinion states the case.

*W. E. Martin* of Abilene, for appellant. On insufficiency of affidavit for search warrant, appellant cites: United States v. Jajeswiec, 285 Fed. 789; United States v. Kelih, 272 Fed. 484; United States v. Palma, 295 Fed. 149; Jozwich v. U. S., 288 Fed. 831; Voorhies v. U. S., 299 Fed. 275.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is the possession of intoxicating liquor for the purpose of sale, punishment fixed at confinement in the penitentiary for one year.

In the indictment there were two counts, one charging the unlawful sale of intoxicating liquor; the other, the unlawful possession. The first count was not submitted to the jury. The verdict rests upon the second count, that is, the possession of intoxicating liquor.

Upon executing a search warrant, officers discovered in the

private dwelling occupied by the appellant about a gallon of whiskey. The appellant's abode was a tent, but was none the less a private dwelling. Penal Code, Arts. 1391 and 1395; Hipp v. State, 45 Tex. Crim. Rep. 200; Hooper v. State, 105 S. W. 816; Favro v. State, 39 Tex. Crim. Rep. 452.

The state relies upon the testimony of the officers showing the possession of the liquor mentioned and the statute making the possession of more than one quart of intoxicating liquor prima facie evidence of guilt. Art. 671, C. C. P., 1925. The admissibility of the testimony showing the result of the search is challenged upon the ground that it was obtained in violation of the provisions of the Constitution of this state and of the United States, wherein it is declared that no search warrant shall issue "without probable cause supported by oath or affirmation." See Art. 1, Sec. 9, Constitution of Texas; (Fourth Amendment to the Federal Constitution).

Appellant relies upon the statute of this state penalizing an illegal search. See Art. 4a, C. C. P., 1925, and Art. 727a, C. C. P., declaring that evidence obtained in violation of the Constitution and laws of this state or of the United States shall not be received in any criminal case. In the instant case, the search warrant was issued upon the affidavit of two persons stating that "the affiants have reason to believe and do believe that in the house and premises described intoxicating liquors are kept and sold in violation of law." Exemption from unreasonable search is a cherished right which the makers of the Constitution and the laws have been zealous in guarding and the courts in preserving. A search without probable cause is unreasonable. The search, without warrant, of persons and vehicles has been sanctioned by lawmakers and courts upon the ground of necessity. Such sanction, however, is withheld, unless in advance of the search, there be evidence of facts showing probable cause. See Battle v. State, 290 S. W. 763; Carroll v. United States, 267 U. S. 132. So, the search without warrant of a person and place made contemporaneously with a lawful arrest is permissible. See Agnello v. United States, 69 Law Ed. 20. But to search a private dwelling occupied as such for contraband property such as intoxicating liquor, the possession of a search warrant legally issued is imperative. This can only be had in accord with the Bill of Rights (Art. 1, Sec. 9, Constitution of Texas), saying:

"No warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation."

Before our Constitution was adopted, the term "probable

cause," as embraced in the Federal Constitution, had a fixed meaning in the courts of other jurisdictions, as well as in our own. The Supreme Court of this state defined it thus:

"A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." (Landa v. Obert, 45 Texas Rep. 539.)

That belief alone is not "probable cause" is illustrated by many judicial decisions and expressions of text writers. Among them are the following:

"And the law in requiring the showing of reasonable cause for suspicion intends that evidence shall be given of such facts as shall satisfy the magistrate that the suspicion is well-founded; for the suspicion itself is no ground for the warrant except as the facts justify it." (Cooley's Constitutional Limitations, 6th Ed., p. 368.)

"The inviolability of the accused's home is to be determined by the facts, not by rumor, suspicion, or guesswork. If the facts afford the legal basis for the search warrant, the accused must take the consequences. But equally there must be consequences for the accuser to face. If the sworn accusation is based on fiction, the accuser must take the chance of punishment for perjury. Hence the necessity of a sworn statement of facts, because one cannot be convicted of perjury for having a belief, though the belief be utterly unfounded in fact and law." (Veeder v. U. S., 252 Fed. 414, 164 C. C. A. 338.)

From an opinion of the United States Supreme Court we take the following:

"The information upon which the search warrant was issued states only that affiant 'has good reason to believe and does believe the defendant has in his possession' such intoxicating liquors, instruments and materials. The warrant clearly is bad if tested by the Fourth Amendment and the laws of the United States." (Byars v. U. S., 71 Law Ed. 331.)

Many precedents are found declaring invalid a search warrant issued upon an affidavit stating that the "affiants had reason to believe and did believe." The great weight of authority is that the grounds of belief, that is, the facts or circumstances or information upon which the belief is founded must be exhibited in the affidavit. A citation of cases in details will not be undertaken. Suffice it to say that in the courts of nearly all of the states of the Union and the Federal courts, the announced law is as above stated. Many of them will be found collated in the

following text-books and reports: Ruling Case Law, Vol. 24, p. 707; Underhill's Crim. Ev., 3rd Ed., Sec. 745; Cornelius on Search and Seizure, Sec. 83, p. 248. Apparent exceptions are found in some of the states based upon statutes attempting to dispense with the necessity of a statement of the grounds of belief. Some of these have been held void by the courts. See Peterson v. State, 27 Wyo. 185, 13 Amer. Law Rep., p. 1284.

For many years the statute-law pertaining to search warrants was embraced in Title 6, C. C. P., 1925, in which authority is given for the issuance of warrants permitting the search for property acquired in violation of the Penal Code. In Arts. 310, 311 and 312 certain requisites of a complaint or application for a warrant are given. In but one of these, namely, that in which the location of the property *is not known,* the statute sanctions the issuance upon an affidavit based upon *"information and belief."* In other words, it appears to be contemplated that the application for a search warrant should be framed in accord with the requisites of "probable cause" as the term was understood at the time the Constitution was written and the statutes enacted.

On April 5, 1907 (Gammel's Laws of Texas, 1903-1907, p. 156), the Legislature enacted a law authorizing magistrates to issue warrants to search and seize intoxicating liquor illegally possessed. The statute expressly declared that the warrant should be issued on an *affidavit based upon information and belief.* The Supreme Court, in the case of Dupree v. State, 102 Texas Rep. 455, declared the law void because it was in conflict with Art. 1, Sec. 9, of the Bill of Rights, upon the ground that it permitted the search of places without describing them. From the opinion we quote:

"The most that the Act can be held to require as a basis for the issuance of the search warrant is that it describe a place where the affiant believes 'intoxicating liquor' is being sold, or is being kept or possessed for the purpose of being sold, in violation of law. * * * Upon this and no more the Act requires the magistrate to issue the warrant. The writ is made to confer authority upon the sheriff or constable to enter and search not only 'such place,' etc., that is, the place which has been described in the affidavit, but 'any place,' etc., where the 'affiant' has good reason to believe any such person has placed or secreted any such liquor. This is so apparent a contradiction of the Bill of Rights that the point of conflict scarcely needs to be pointed out. The Bill of Rights forbids the issuance of any warrant to search 'any place'—without describing it."

The court stated in substance that the fault in the statute above mentioned being fatal to its validity, no expression of opinion would be made concerning that part of it which permitted the warrant to issue on *information and belief,* the determination of that point being unnecessary to the decision of the case. However, it was said that in view of the statute permitting an arrest on an affidavit of information and belief, that the court would hesitate to annul the statute in question on that ground alone. The sufficiency of the complaint for arrest is not here involved. It can be said, however, that for such complaint on information and belief there is express statutory authority (Art. 415, C. C. P.), while for a search warrant on such showing the Legislature has given no sanction. On the subject, however, the Supreme Court, in the opinion on the subject of warrants, plainly indicated that an affidavit for a search warrant was not sufficient to show "probable cause" when it was made on information and belief without stating the grounds of belief. From the opinion (Dupree v. State, 102 Texas Rep. 464) we quote:

"It will be seen that they do not lay down any rule, compliance with which will be impossible, or even difficult in practice, such as that warrants cannot issue except where the informer has positive knowledge of the facts upon which they are to be based, but that they merely require that the facts from which he has formed his belief shall be stated to the magistrate in the affidavit or deposition, so that he and not the informer shall be the judge whether or not they constitute the probable cause required by the Constitution. When we consider the great diversities in human minds and characters, we have no doubt that this is what the law ought to require when an affiant cannot swear from his personal knowledge. By some minds that is readily accepted as sufficient foundation for firm belief which in others generates, at most, only vague suspicion. In the formation of beliefs and in the readiness to swear to them, men differ to an almost infinite extent according to the constitution of their minds and characters. Some are cautious and scrupulous, others hasty or unscrupulous, sometimes both; and when the affiant's belief is made the only measure of probable cause, there is no fixed standard at all. The theory of the authorities before cited is that the Constitution intends to give a guaranty to the citizen against searches and seizures dependent upon such uncertainties by interposing between him and the rash or unscrupulous accusers the judgment of a magistrate chosen by the state. But that view is not the only one that has

been taken and practically followed in legislative practice and judicial construction."

In 1919 the Legislature again took up the subject and enacted Art. 691, P. C., as follows:

"A search warrant may be issued under Title 6 of the Code of Criminal Procedure for the purpose of searching for and seizing and destroying any intoxicating liquor possessed, sold or to be sold or transported, or manufactures in violation of this law. * * * *No warrant shall be issued to search a private dwelling, occupied as such, unless some part of it is used as a store, shop, hotel or boarding house, or for some purpose other than a private residence, or unless the affidavits of two credible persons 'show' that such residence is a place where intoxicating liquor is sold or manufactured in violation of the terms of this Act. The application for the issuance of and the execution of any such search warrant, and all proceedings relative thereto, shall conform as near as may be to the provisions of Title 6, of the Code of Criminal Procedure, except where otherwise provided in this title."*

In construing the existing statute on search and seizure, viz.: Title 6, C. C. P., and Art. 691, P. C., that part of Title 6 embraced in Art. 311, supra, must necessarily be *ignored,* because it undertakes to authorize the search of places without demanding that they be described. Thereby it offends against the Constitution requiring that the place to be searched be described. That provision was clearly denounced in the Dupree Case, supra, Art. 311, supra, and the affidavit for its issuance, have relation to and are limited to a search warrant to search for property at any undescribed place, a thing that cannot be under the Bill of Rights. Obviously, that article can have no bearing on the present matter. In so far, therefore, as Title 6 applies to a search for intoxicating liquors, it contains no authority to make the search upon an affidavit based alone upon information and belief. The question, therefore, must be determined by the construction of Art. 691, supra, in connection with Art. 1, Sec. 9, Bill of Rights, and the previous interpretation of the term "probable cause" as used in the Bill of Rights. The terms of Art. 691 are indicative of the legislative intent to adhere to the interpretation of the constitutional requirement of "probable cause" that the affidavit state the facts or circumstances upon which the belief is founded. The statute upon which the issuance of the search warrant is based forbids the issuance of such warrant unless it *show* that the residence was a place where the law was violated. The affidavit in question

goes no further than to state that the "affiants had grounds for believing and did believe." "Show" and "state" are not synonymous. To "show" means to make clear or apparent; to prove. See Coyle v. Commonwealth, 104 Pa. 133; Cox v. U. S., 50 Pac. 175; 5 Okla. 701; First National Bank v. Swan, 23 Pac. 743; Spalding v. Spalding (N. Y.), 3 How. Prac. 297, 301; also Hennessy v. Hall, 133 Pac. 350, 14 Cal. App. 759; In re: Lee, 85 N. Y. Supp. 224, 41 Misc. Rep. 642; Roberts v. Fagan, 92 Pac. 559, 76 Kan. 536. In another statute, upon a like subject, the Legislature has made a distinction between the term "show" and "to state" the grounds for belief. See Art. 222, C. C. P. (1925), Subdivision 2.

This court, in 1922, held that though the search was unauthorized, there being no statute penalizing the officer making it, the evidence of crime obtained in the search would not be excluded. (Welchek v. State, 93 Tex. Crim. Rep. 273.) This holding was contrary to that of the Federal courts but in harmony with that of most of the state courts. Subsequently, in 1925, the Legislature passed the statutes upon which the appellant relies, namely: Arts. 4, 4a, and 4b, in which Sec. 9, of Art. 1, of the Bill of Rights, was re-enacted. The statutes also specifically declare it unlawful to search without a warrant, and also declare it to be a misdemeanor penalized by a fine or imprisonment or both. The Legislature also passed Art. 727a, C. C. P., which reads thus:

"No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the state of Texas, or of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

The manifest purpose of these statutes was to reverse the rule applied by this court in the Welchek case, and it now becomes the duty of this court to give effect to the legislative intent thus expressed.

Subsequent to the declarations of the Federal court, quoted from Veeder v. U. S., 164 C. C. A. 338, insisting that an affidavit for a search warrant be based upon facts and not merely upon information and belief and giving reasons therefor, the Federal Congress has put into statutory law that which previously rested in the judicial interpretation, declaring:

"A search warrant cannot be issued but upon probable cause supported by affidavit, naming or describing the person and particularly the property and the place to be searched." (Title 11, Sec. 3, 40 U. S. Stat. at Large, 228.)

"The affidavits or depositions must set forth the facts tending

to establish the grounds of the application or probable cause for believing that they exist." (Sec. 5, Id.)

By this means the Federal Congress has made unlawful the search of a habitation upon a search warrant issued upon an affidavit failing to show "probable cause" by setting forth the facts upon which the belief is based. This law of Congress is among those known as the National Prohibition Acts enforcing the provisions of the Eighteenth Amendment to the Constitution of the United States, in which it was declared that "Congress and the several states shall have *concurrent* power to enforce this article by appropriate legislation. This amendment, unlike many other provisions of the Constitution of the United States, confers *concurrent* power, that is, power in each of the governments, state and Federal, by appropriate legislation to enforce the prohibition of the "manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes." This has been repeatedly declared by the Supreme Court of the United States and by this court. See Ex Parte Gilmore, 88 Tex. Crim. Rep. 529.

Belief on undisclosed information does not show "probable cause" for search as that term is used in the state and Federal Constitutions. Such is the expressed view of the United States courts and of nearly all the state courts. With one exception, we believe that in the few states holding the contrary view, there is a statute expressly declaring an affidavit on information and belief sufficient. In some of the states having such a statute, it has been held void by the courts. In this state there is no such statute. The only statute of that kind ever passed in this state was held void by the Supreme Court of this state on other grounds. The definition of "probable cause" announced by the Supreme Court of this state before the present Constitution was adopted is like that in the Federal courts and the state courts holding the belief insufficient, and in adopting the Constitution, the definition was approved. In holding the statute of 1907 void the Supreme Court clearly indicated that the weight of authority and the better reason was opposed to the issuance of a search warrant upon the belief of the affiants. The dictum of the Supreme Court at that time touching warrants of arrest is not of weight, for the reason that it is but dicta, and for the further reason that there is express statutory authority for a

warrant of arrest on information and belief, while as to a search warrant there is no such statute.

In passing Arts. 4, 4a, 4b, and Art. 727a, supra, the Legislature indicated the desire to disapprove the refusal of this court to follow the Federal courts in the holding by this court that evidence obtained through an illegal search could be used in a criminal trial. Thus, by implication, the Legislature sanctioned the construction by the Federal courts of the search and seizure clause of the Constitution.

In passing the present law on searching a private dwelling embraced in Art. 691, supra, the Legislature used language incompatible with the validity of such a search warrant on information and belief, thus indicating that the language used in the statute of 1907 (criticised by the Supreme Court in the Dupree case, supra) was not expressive of the legislative intent, but that by the use of the word "show" it was intended that the facts upon which the belief was based would be necessary to a valid search warrant of a private dwelling. Such interpretation of the legislative intent brings the state law in harmony with the Federal decisions and statutes on the subject of search and seizure, so far as they relate to the search of a private dwelling, and the enforcement of the Eighteenth Amendment to the National Constitution.

Upon the consideration hereinabove stated, and in the light of the history of the search and seizure law of this state giving effect to the rule which we understand governs in the interpretation of statutes, the writer believes it to be the duty of this court to declare that in the enactment of Art. 691, supra, stating the conditions upon which a private dwelling occupied as such, may be searched, the Legislature did not intend to give a meaning to the term "probable cause" embraced in the Bill of Rights different from that prevailing in the Supreme Court of the United States, announced in the statutes of the United States and adopted by practically all of the states of the Union where the subject has been discussed. In other words, nothing is found in the statute which conveys to our minds the idea that it was the intention of the Legislature to announce that a warrant to search a private dwelling might be issued upon an affidavit in which there was given no fact, circumstance or detailed information showing or tending to show that the dwelling was used for the purpose denounced by the statute which conveyed to the magistrate in whom the law vested the authority and upon whom it imposed the duty of issuing a warrant upon "probable

cause," no information from which to determine whether the the facts justified the issuance of the warrant.

The abandonment of the language used in the law of 1907, permitting the issuance of a search warrant in an affidavit of "information and belief," and the selection of more specific terms embraced in Art. 691, supra, are confirmatory of this view. In the absence of unequivocal announcement, it cannot be assumed that the Legislature intended to depart from the construction of "probable cause" adhered to by Congress and the Supreme Court of the United States, and most of the states of the Union as properly giving effect to the Bill of Rights, and to adopt in its stead the terms of annulled statute of 1907, which terms were embraced in the statutes of other states, have been by the courts of such states condemned as in conflict with the Bill of Rights. In the search of an automobile, while permissible without warrant, the law forbids a search upon suspicion or belief and demands evidence of facts showing "probable cause." Odenthal v. State, 290 S. W. 743; Battle v. State, 290 S. W. 762; Carroll v. U. S., 69 L. Ed. 543. It is not believed that the Legislature has placed the search of a private dwelling upon a lower plane. If the affiants seeking a search warrant have reason to believe that a private dwelling is used for the storage of liquor, no sound reason is perceived for failing to disclose the grounds of belief in the affidavit presented to the magistrate. As said by the Supreme Court of this state, the demand that the affidavit exhibit the facts upon which the belief is founded "does not lay down any rule, compliance with which will be impossible, or even difficult in practice." The rule is intended to "give a guaranty to the citizen against searches and seizures dependent upon such uncertainties by interposing between him and the rash or unscruplous accusers the judgment of a magistrate chosen by the state."

Because the criminating evidence was obtained through a search upon a warrant issued without legal authority, it was improperly received over the objections of the appellant. Therefore, the judgment is reversed and the cause remanded.

*Reversed and remanded.*


### CONCURRING OPINION.

I desire briefly to state my reasons for concurring in the opinion of my Brother Morrow.

There is now no valid statute in this state authorizing a search warrant to issue upon an affidavit predicated upon the

"belief" of the affiant. So far as the writer knows there never did exist but two such statutes, one being under the circumstances stated in Art. 311, Title 6, C. C. P., which undertakes to authorize a warrant to issue where the affiant has "good ground to believe" that property was stolen but not alleged to be concealed at any particular place. If it be true that affiant does not know where the alleged stolen property is concealed it follows that no description of the place to be searched could be given, and such statute is inoperative and was so held by our Supreme Court in Dupree v. State, 102 Texas, 455, as of necessity it must have been, as being violative of Sec. 9, Art. 1, of the Constitution of this state which forbids the issuance of a search warrant unless the place to be searched is described. The only other statute which undertook to authorize the issuance of a search warrant upon the "belief" of the affiant was that passed in 1907, Chapter 77, of the Acts of the Thirtieth Legislature, which related to searches for intoxicating liquor stored in districts where the "Local Option Law" was in effect. That statute was under consideration in Dupree v. State (supra). It is apparent to the writer from the opinion in that case that the Supreme Court thought the great weight of authority to be against upholding that feature of the statute, but they found it unnecessary to base their opinion on that provision. Any reasons for hesitation the Supreme Court may have had to hold such statute unconstitutional does not confront this court because that statute is no longer operative and no statute is in force which undertakes to authorize a search warrant to issue where the affidavit therefor is based only upon a stated "belief" of the affiant.

In order to put into operation the present "Statewide Intoxicating Liquor Prohibition Law" the Legislature in 1919 (Thirty-sixth Legislature, Second Called Session, Chapter 78, p. 228) again took up the subject of searches and seizures of intoxicating liquor and enacted the law which is carried forward in the 1925 Revision of the Penal Code, as Art. 691. The language employed in this last enactment is much different from that found in the law of 1907, and nowhere does it undertake to authorize the issuance of search warrants upon affidavits based upon information and belief. Sec. 9, Art. 1, of the Constitution of this state reads:

"The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, *nor without probable cause, supported by oath or affirmation.*"

This provision of our Constitution is practically the same as that found in the Constitution of the United States. When is it made to appear to the issuing magistrate from the oath or affirmation that "probable cause" exists? Can it be said that an affidavit which simply states that affiant "believes and has good reason to believe" that circumstances exist which authorize the warrant to issue does any more than inform the magistrate that the affiant believes the warrant should issue? It seeks to substitute the opinion of the affiant for the judgment of the magistrate who in such case is called upon to act judicially without any knowledge of the facts upon which the affiant predicated his belief. Shortly after the adoption of our present Constitution the Supreme Court of this state, speaking through Judge Moore in Landa v. Obert, 45 Texas, 539, approved a definition of "probable cause" which, though couched in somewhat different language, is in substance and meaning the same as that adopted by the Supreme Court of the United States and by the courts of a great majority of the states. The Sixty-fifth Congress in 1917, by Title 11, Secs. 3 and 5, enacted the following statute:

"Sec. 3. A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched."

"Sec. 5. The affidavits or depositions must *set forth the facts* tending to establish the grounds of the application or probable cause for believing that they exist."

This was only a recognition by congressional enactment of the construction long theretofore given the Federal Constitution by the Supreme Court of the United States. It must be presumed that the Legislature of our own state was aware of the statutes and the decisions of the Supreme Court of the United States relative to the subject when the law of 1919 was enacted and when it was carried forward in the revision of our statutes in 1925. It is apparent also that the Legislature was not in accord with the rule announced in Welchek v. State, 93 Tex. Crim. Rep. 271, 247 S. W. 524, as indicated by the passage in 1925 of the law which now appears in the Code of Criminal Procedure as Arts. 4a and 727a, and it must also be presumed that the Legislature was aware of the statutes of the United States heretofore quoted when Arts. 4a and 727a were enacted, and which read:

"Art. 4a. It shall be unlawful for any person or peace officer or state ranger to search the private residence, actual place of

habitation, place of business, person or personal possessions of any person, without having first obtained a search warrant as required by law."

"Art. 727a.   No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

While the statutes of the United States do not control the courts of this state in matters of procedure, yet they may properly be looked to in discovering the intention of our own Legislature in subsequent enactments.   Courts are not so much concerned about the consequences of legislation as with its true interpretation.   I discover nothing in our present statutes which indicates any purpose of the Legislature to attempt a departure from the well established holding of the United States Courts and those of a majority of the other states to the effect that an affidavit for a search warrant which furnishes no facts or information to the issuing magistrate, but merely avers affiant's belief relative thereto, does not comply with the provisions of our own and the Federal Constitution requiring "probable cause" to be shown.   Any statute embracing such a departure would most certainly be out of harmony with the Federal statutes and decisions on the same subject.

I therefore record my concurrence in the opinion of Presiding Judge Morrow.

*Hawkins*, Judge.

### DISSENTING OPINION.

A dissenting opinion can be justified only when the principle announced is believed to be right, and a statement of the reasons for dissent relate to some matter of importance to the people. From the beginning of jurisprudence in Texas until now our courts have had but one rule in regard to the form of affidavits to complaints necessary in the institution of criminal or quasi criminal proceedings, whether such affidavits formed the basis for the arrest and prosecution of men for murder, rape, robbery, burglary, etc., before an examining magistrate, or be the foundation for the prosecution in the county or justice courts for all sorts of offenses of the grade of misdemeanor, or be that upon which a search warrant to investigate, seize and discover matters of evidential value, was issued.   The rule has always been, as far as I have been able to find out, that such affidavit might be made on information and belief.   Authorities may be

found cited in note 11, under Art. 222, of Vernon's 1925 Revised Criminal Code of Procedure.

No case can be found in which the courts of Texas have been divided on this question until now. The form for affidavit to such complaint is statutory. Art. 222, C. C. P., relating to the form of such complaint, states as follows:

"It must show that the accused has committed some offense against the laws of the state, either directly, or that the affiant has good reason to believe, and does believe, that the accused has committed such offense."

Upon complaints in this form warrants have been issued through the years commanding the arrest of men—the seizing of their bodies—for murder, rape, robbery and all offenses of whatever grade, and no Texas court has questioned the legality of such arrest. If necessary in order to execute such warrant the house of the accused may be broken and entered and he be seized in any place to which he may have fled or in which he may have taken refuge. Bristow v. State, 36 Tex. Crim. Rep. 381. Attempts have been made to have this court hold affidavits in conformity with this statute violative of the constitutional rights of persons to be secure in their houses, etc., but the attempts have been abortive. Fricks v. State, 124 S. W. 922.

That part of our statute relating to search warrants is found in Title 6, C. C. P., and nowhere therein is it suggested that a different form of affidavit would be required for the obtaining of a search warrant than for the arrest of the person. The only requirement stated in said Title 6 is that a "written sworn complaint" be made to the magistrate. Judge Willson, for many years one of the most profound and able judges on this court, long since prepared forms based on his conception of the procedure commanded by the criminal statutes of this state, doubtless with the assistance of his brilliant colleagues, Hurt and White. The forms so prepared for affidavits for search warrants are numbered 1105 to 1108 in the 4th Ed. of Willson's Criminal Forms. In form 1105, after setting out that the affidavit must state that A. B. took from the affiant property, it is stated as follows: "And I have cause to believe that the said property is now concealed by the said A. B. in his dwelling house, situated in said county (describing it), wherefore I ask that a warrant to search for and seize the said property be issued," etc. This is the form laid down by Judge Willson under present Art. 310, C. C. P. Under Art. 311, C. C. P., his form is 1106 and sets out as follows: "And I suspect one A. B.

of being the thief of said property, and have good ground to believe that said property was so stolen by him as aforesaid, wherefore I ask that a warrant to discover and seize said property be issued," etc.   Forms 1107-1108, after describing the place desired to be searched, state: "Which place one A. B. is supposed to have charge of," etc.   These latter forms are for the searches authorized under Art. 312, C. C. P.   It is at least probable that hundreds, if not thousands, of search warrants have been issued in this state upon these forms since Judge Willson prepared them, without question being made.

In 1907 the Legislature of this state enacted a law authorizing the issuance of search warrants upon affidavits expressly made on information and belief.   In 1909 the validity of this law was attacked in Dupree v. State, 102 Texas, 455, upon various grounds, one of which was that the requirement of probable cause in our Constitution was not met by an affidavit made on information and belief.   The opinion in said case is exhaustive and was written by one of the strongest men who ever graced the Supreme Court of Texas, Hon. F. A. Williams.   Practically all the authorities cited by my brethren in support of their opinion herein were reviewed.   Judge Williams declined to uphold the attack on said law on the ground stated, but did hold same invalid for other reasons.   Some of his remarks are pertinent to the discussion of the question now before us, and I quote as follows:

"Our Code of Criminal Procedure has contained, since the revision of it in 1879, a provision which says that a complaint 'shall be deemed sufficient' for the issuance of a warrant for the arrest (seizure) of a person when it states, among other things, that the accused has committed an offense, naming it, 'or that the affiant has good reason to believe, and does believe, that the accused has committed such offense.'   We do not discover that any question has ever been made as to the constitutionality of this latter provision, although complaints following it have repeatedly been held sufficient.   Brown v. State, 11 Tex. Crim. App. 451; Clark v. State, 23 Tex. Crim. App. 260; Hall v. State, 32 Tex. Crim. Rep. 594; Anderson v. State, 34 Tex. Crim. Rep. 96; Smith v. State, 45 Tex. Crim. Rep. 411.   Probably the large majority of warrants of this kind, for almost thirty years, have been issued as a matter of course upon complaints using this language.

"The provisions of the same code concerning the issuance of the search warrants therein provided for are not of such easy

construction, but some of them recognize the sufficiency of complaints stating the affiant's belief of at least some of the facts. All of these provisions seem to require the issuance of the warrants as a matter of course upon the filing of the required complaints, and none of them express the idea that the magistrate, when the prescribed statements have been made, shall pass upon the question as to their sufficiency to show probable cause. No question of the kind seems ever to have been made concerning them. In other states the same kind of legislation seems to have been common. In Lowrey v. Gridley, 30 Conn. 450, and State v. Davie, 62 Wis. 305, the sufficiency of such affidavit to comply with the Constitution is directly affirmed. In Maine and Vermont, and probably in other states, the same view has been repeatedly acted upon. State v. Welch, 79 Maine, 104; State v. Nowlan, 64 Maine 531; Lincoln v. Smith, 27 Vt. 329; State v. Prescott, 27 Vt. 194.

"Massachusetts decisions are cited as announcing the same doctrine, but the statutes of that state seem to have required the complaint to be so shaped as to submit the question of probable cause to the magistrate, and the decisions in that state may not conflict with those authorities first mentioned. In the case of Commonwealth v. Certain Lottery Tickets, 5 Cush. 369, the course at common law is said to have been for an affiant seeking a search warrant to swear that he 'has reasonable cause to suspect,' etc. In the case of Elsee v. Smith, 1 D. & R. 97, the judges of the King's Bench declared that a justice of the peace might lawfully issue a search warrant upon affidavit of belief; but such authorities as the two last probably assume, which seems to be the truth, that at common law it was left to the magistrate to determine whether or not the complaint, however worded, presented probable cause. Some of our statutes, particularly that in question, as well as those of many other states, leave him no such discretion, but require him to issue the writ upon the making of an affidavit containing the prescribed statements. The Legislature has thus, in effect, determined that such oaths, in themselves, show probable cause, and we are confronted by the question whether or not it had power to do this. It is obviously true that the Legislature cannot dispense with the requirement of the Constitution that probable cause be shown, and that, therefore, it cannot evade this limitation upon its power by an attempt to make that probable cause which plainly is not such. But have we such a case? In determining a question like this we must take into consideration the history

of the subject and what has been regarded as probable cause and when we find that that which the Legislature has, in this instance, treated as being sufficient has been thus long and extensively so regarded here and elsewhere by both legislative and judicial authority, it would be difficult to say that there is such a plain and palpable violation of the Constitution as to justify the courts in declaring the statute void, and if this were the only objection to the Act in question we should hesitate long before reaching such a conclusion."

Special attention is here called to the concluding part of said quotation:

*"When we find that that which the Legislature has, in this instance, treated as being sufficient has been thus long and extensively so regarded here and elsewhere by both legislative and judicial authority, it would be difficult to say that there is such a plain and palpable violation of the Constitution as to justify the courts in declaring the statute void. * * * We should hesitate long before reaching such a conclusion."*

So the matter stood, and for that matter stands. No change has been made in the statutes of this state relating to the forms of affidavits in any case. In 1919, to make effective the constitutional forbiddance of the sale, manufacture, etc., of intoxicating liquor, the so-called Dean law was enacted. See Chapter 178, Acts First and Second Called Session, Thirty-sixth Legislature. Sec. 37 of that Act is now Art. 691 of our Penal Code. Said Act was written prior to the enactment of the Federal statute quoted in the opinion of the majority.

So we see that up to now but one form of affidavit has been required in Texas, and that as far as can be told all warrants for search and seizure of things evidential, issued upon the same character and form of affidavit to complaints laid down by the statute, and upheld uniformly by the courts as sufficient to justify warrants for the seizure of the persons of such of our people as offended against the laws of the land. My brethren have reached the conclusion that we should hereafter require that an affidavit for search warrant must set out facts upon which the makers of such affidavit base their belief that the law is being or has been violated, and that such affidavit cannot be made on information and belief. I cannot agree with them, hence this dissent. The matter involved is of serious import. With profound conviction that I am right and that my brethren are wrong I set out at some length reasons for my dissent.

Boiled down, the reasons advanced by my brethren for their

conclusion are but two, first, that the Federal courts and statutes announce the correct rule when they say that no search warrant should issue upon an affidavit made on information and belief and until facts are stated to the magistrate and put into the affidavit which appear to justify the makers in the belief that there is a violation of the law; second, that in Art. 691 of our Penal Code, relating to the issuance of search warrants for private residences in liquor violations, appears the word "show" which is by them construed to mean that such affidavit should contain a statement of the facts satisfactory to the magistrate taking the affidavit.

To students of the law it needs but to be stated that save in case some Federal question be involved, this court is in no sense compelled to follow Federal courts in their procedure or rulings. We have expressly declined in many instances to make our rules of procedure conform to those of the Federal courts on the same point. We decline to consider preliminary motions to quash search warrants and to return property seized thereunder. The Federal courts uniformly allow such practice. We do not allow oral charges to juries in felony cases, nor do we permit charges on the weight of the testimony, nor can a judge indicate under our procedure his opinion in a given case. We refuse to consider a motion to quash an indictment based on the ground that there was no evidence before the grand jury which returned it. Federal courts follow such practices. Many other differences between our rulings and those of Federal courts might be mentioned, but these suffice. So I take it the mere fact that Federal courts hold to a certain rule affords no justification for my brethren in inaugurating a new thing in procedure in this state, and especially so when the new procedure is a departure from the hitherto holdings and practice in the same regard in this state. In this connection attention is called to the fact that the Federal holding in regard to all affidavits for search warrants, is the same whether the place to be searched be a private residence or otherwise. This is stated in view of what I deem the inconsistent effort of the majority to justify their departure upon the second reason stated above, *i. e.*, the use of the word "show" in a statute having reference solely to affidavits for search of private residences in liquor cases only.

Certainly this rule now laid down is one which will mark the beginning of at least one and likely two or three new rules in Texas as to affidavits—making more rigid the rule in regard to a

search for things, than is required when the purpose is to seize the individual, and making necessary two forms of affidavits for search warrant, viz.: one when a private residence is to be searched, and another when the place to be searched is not a private residence, and making necessary one form when the residence is to be searched for a liquor violation and another when it is not so to be searched. Art. 691, supra, has reference to no other character of searches save for violations of the liquor statute. · I shall presently discuss the correctness of these rules, but at this time I am only saying that the fact that same puts Texas procedure in this particular in line with Federal procedure, is not enough to justify the departure indulged in by my brethren.

Turning to the second reason above mentioned, viz.: that in Sec. 37 of the Dean law, which is now Art. 691, P. C., the use of the word "show" is claimed to justify this new departure in regard to affidavits. The author of the Dean Act in every section of same evidences his purpose to reinforce, strengthen and make effective a law whose sole purpose was the stoppage of the traffic in intoxicating liquor and punishment of those who violate it, and I assert that the Legislature never dreamed that the use of the very common, ordinary word "show," in referring to the affidavit necessary to the search of a private residence, would ever be construed or attempted to be held as meaning to prove, to make apparent, etc. The word is evidently used in its popular meaning of to state, to tell, to reveal, etc.

My brethren assert that the word "show" in Art. 691, supra, justifies them in concluding that the Legislature intended thereby to require in affidavits for search warrants for private residences in liquor cases, that the facts known to the two makers of the affidavit, should be stated; and that such facts must be sufficient to satisfy the magistrate in the first instance, the trial court in the next place, and lastly the Court of Criminal Appeals—that said affiants were justified in their belief that the party complained of was violating the law—and further justifies them in holding that such affiants may not make such affidavit on information and belief, but must make same upon · their knowledge. Art. 691, supra, having used the word "show" only in reference to search warrant affidavits for private residences in liquor cases, we are thus driven by the opinion of the majority to the use of one form of affidavit for such searches, and a different form when search is of some place other than a private residence, because there is no word "show" anywhere

in Title 6 relating to other searches, and still a different form when arrest and seizure of the person is purposed, and possibly a still different form when the purpose of the search warrant is to discover stolen property. It must be plain that the rule adopted by the majority being hereafter the law, we must abandon the plain, simple, easily understood, uniformly upheld statutory procedure of issuing warrants in all kinds of cases simply on the affidavits of credible persons who are willing to state on oath that according to their information and belief the law has been violated; and must commit our state to the following uncertain, hydra-headed, unprecedented substitute for our hitherto procedure, viz.:

Warrants for arrest of persons for all crimes may issue on affidavit based on information and belief.

Warrants for search of private residence in liquor cases will issue only on affidavits stating facts and not made on information and belief, because Art. 691, P. C., uses the word "show."

Warrants for search of private residences in cases other than liquor violations, will not issue on information and belief, because we hereafter follow the Federal procedure.

Warrants for search for stolen property, whether in private residences or not, will not issue on information and belief, because hereafter we follow the Federal procedure.

I wish to be plain. If the majority intend to say that the Legislature has no power and right under the Constitution to say that a warrant can be issued on a complaint sworn to on information and belief, and that all affidavits so made are unconstitutional—then what I have last above said should not be stated, but if they mean that our statute laying down forms for complaints upon which warrants for the seizure of all persons charged with violation of the law, shall issue on affidavits made on information and belief—but the warrant for search in all cases save when the object is a liquor violation in a private residence, must be based on an affidavit stating facts and made on knowledge, and that when the place to be searched is a private residence and the object is a liquor violation, then there must be the affidavits of two parties stating facts and sworn to on knowledge—then I repeat we are committed to a devious, uncertain and difficult procedure. To me there seems nothing in the use of the word "show" in said Art. 691, supra, a part of which is quoted in the majority opinion, to justify any such departure.

The majority contend that the word "show" means to make

clear or apparent; to prove, and they cite a number of authorities from other states than Texas to support their contention. We are not without legislative rule of construction on this point, and I prefer to follow the rule of construction laid down by our own state and to conform our practice hereafter to views entertained by judges of our own courts than to follow those of other states. Art. 48 of our own Code of Criminal Procedure commands that all words used in this code are to be taken and understood in their usual acceptation in common language— *except where specially defined.* Neither in Art. 691, supra, nor elsewhere in our statutes, is the word "show" given any special definition. Further, when words appear in lexicons or dictionaries as having more than one meaning or definition, the invariable rule is to first state that definition most common and popular—and then proceed to state those less so. Webster's International Dictionary is before me. The word "show" is therein given several sets of definitions. I state them in the order they appear: 1. To exhibit; to place in sight; to display. 2. To exhibit to the mental view; to tell; to disclose; to reveal. 3. To make known the way; to direct; to guide; to usher. 4. To make apparent; to make clear as by evidence; to prove; to explain. 5. To bestow; to confer. It thus becomes apparent that my brethren adopt as the definition of the word "show" the definition laid down in the lexicon as the next to the least used. My contention is that if the word "show" as used in Art. 691, supra, needs interpretation at all, it should be given the meaning: To tell; to disclose; to reveal, which definitions are so listed by the lexicographer as to make it indisputable that they are much more usually accepted as the meaning of the word and are more in common use than the ones claimed by the majority.

I may further call attention to the fact that their attempted definition violates another familiar rule of construction. My contention is strictly in line with said well settled rule of construction. Mr. Black, on page 98 of his work on Interpretation of Laws, says:

"The mind of the Legislature is presumed to be consistent; and in case of a doubtful or ambiguous expression of its will, such a construction should be adopted as will make all the provisions of the statute consistent with each other and with the pre-existing body of the law."

And also on page 110 of said work appears the following:

"It is presumed that the Legislature does not intend to make

unnecessary changes in the pre-existing body of law.  The construction of a statute will therefore be such as to avoid any change in the prior laws beyond what is necessary to effect the specific purpose of the Act in question."

Applying these plain and well settled rules, and looking to other statutes enacted prior to Art. 691, supra, in order to see in what sense the word "show" has been theretofore used by our Legislature, we observe the following instances:  Subdivision 5 of Art. 395 of our C. C. P., relating to an indictment, says: "It must show that the place where the offense was committed," etc.  Patently this means only the indictment must *state* that the offense was committed within the jurisdiction.  No showing of facts aside from such statement, could have been intended. Again, Art. 463, C. C. P., uses this expression:  "Such process shall *show* that the witnesses are summoned for the state and the defendant."  It would be foolish to argue that this means anything save that the process must *state* that it is for both parties. Also Art. 478, C. C. P., contains the following:  "Shall issue a certificate * * * showing the amount of each item," meaning plainly that the amount of each item should be *stated*.  Again, Art. 542, C. C. P., in reference to applications for continuance, says that same "Must show" * * * that the applicant expects to procure the attendance of the witness at the next term, and that the absent testimony cannot be procured from any other source.  Manifestly this means only that the applicant must *state such facts*.  So on and on.  See Art. 556, C. C. P.  Art. 566, C. C. P., 580-618-727½-766½-883, all in our Code of Criminal Procedure, and others.  A final instance is Art. 222, C. C. P., which provides in reference to a complaint expressly that it must *show* that the accused has committed some offense against the laws of the state, either directly or that the affiant has good reason to believe and does believe that the accused has committed such offense—and thus completely by direct statute overturns the construction of my brethren by saying in so many words that a showing is accomplished by a mere statement on information and belief.

In view of the fact that no instance can be found in our statutes where the word "show" is used in the sense contended for by my brethren, and that our laws abound in its use in the sense contended for by me, and bearing in mind the statutory rules of construction above quoted, I would, as said by Judge Williams, supra, hesitate long before engrafting on our procedure a rule which depended for its vitality upon giving a mean-

ing to a word of as common use as the word "show," a meaning different from that which has been heretofore used in our statutes.   It is a familiar rule that when a word is used without special definition by a Legislature or by a court different from that which has been theretofore frequently used, the presumption is that they intended to use it in the same sense as theretofore.

How easy it would have been for the Legislature in enacting the Dean law, if they intended to conform our practice to that of the Federal courts in this regard, or to require a statement of the facts in an affidavit for search warrant in a liquor case, or to depart from long established construction of such affidavit— to have said so plainly instead of using the common word "show" without any indication whatever of an intention to depart from the use of that word in other Acts of the Legislature.   Mr. Maxwell, in his work on Interpretation, 2d Ed., p. 96, says:

"One of these presumptions is that the Legislature does not intend to make any change in the law beyond what it explicitly declares, either in express terms or by unmistakable implication, or, in other words, beyond the immediate scope and object of the statute.   In all general matters beyond, the law remains undisturbed.   It is in the last degree improbable that the Legislature would overthrow fundamental principles, infringe rights, or depart from the general system of law, without expressing its intention with irresistible clearness; and to give any such effect to general words, simply because, in their widest and perhaps natural sense, they have that meaning, would be to give them a meaning in which they are not really used."

How aptly the words fit what the majority are doing in this instance, without either "express term or unmistakable implication" in the state, they are imputing to the Legislature which enacted that statute an intent to change the procedure of fifty years—and with nothing to justify save the use in such statute of a very common word.   They are giving to the enactment ·a meaning out of harmony with the whole body of our statutes and decisions.

A few more observations.   We are commanded by Art. 23 of our C. C. P. in plain language to construe the provisions of this code so as to attain the object intended by the Legislature, viz.: the prevention, suppression, and punishment of crime.   Unless the construction placed upon the word "show" will have that effect, it is wrong.   If, as I contend, there is no need for inter-

pretation, and if the taking of the word "show" in its common and popular meaning will tend to prevent, suppress, and punish crime, then I am right.   Let us see.   In the case before us an affidavit was made by two credible witnesses, who state on their information and belief, that this defendant possessed whiskey for sale in a certain place, which was his private residence; a warrant to search the place was issued.   Search of same revealed appellant's possession of a quantity of whiskey which a jury under appropriate instructions have said he possessed for the purpose of sale.   In other cases pending on our docket similar and kindred facts were discovered under process similarly sued out and in these cases juries have found the accused parties guilty.   There appears no question as to guilt if the affidavit for search warrant be held legal, but if the word "show" be given the interpretation contended for by my brethren, all of these cases must not only be reversed but dismissed finally, for without proof of what the officers found upon search the state cannot make out its case.   I cannot bring myself to believe when two constructions of a word or phrase are before this court—one of which will prevent, suppress, and punish crime—and the other of which will hinder and make difficult the processes of the law and turn guilty men loose—that we can shut our eyes either to the command of Art. 23, or the consequences of our adoption of one rule or the other.   But it may be asked, will the adoption of the construction of the majority hinder and make more difficult the enforcement of the law.   In my thinking there is but one answer to that question, which is in the affirmative.   My contention is that when two credible persons make an affidavit stating that to the best of their belief and information a crime is being committed in a certain place, a warrant to search that place should issue, and it is evident that if this is adopted it constitutes a plain, simple, uniform and easily understood process of the law.   From cases coming before this court it is plain that this is the process that has been adopted throughout our state and that all of the affidavits heretofore made are in this form.   In my judgment this fully measures up to the probable cause clause of our Constitution as same is interpreted in the approved opinion in Landa v. Obert, 45 Texas, 539.   In line with this Judge Williams in the Dupree case, supra, says, referring to the provisions of our statute:   "All of these provisions seem to require the issuance of the warrant as a matter of course upon the filing of the required complaint, and none of them express the idea that the magistrate, when the pre-

scribed statements have been made, shall pass upon the question as to their sufficiency to show probable cause." Some of the difficulties following the adoption of the construction contended for by my brethren are patent. If it be required that facts stated in the affidavit be deemed sufficient by the magistrate, it would be pertinent to ask what facts will be deemed sufficient in a given case to justify the magistrate in the issuance of the search warrant. Since it is inevitable that no two cases rest on the same facts, it must follow that no rule can be laid down which will apply to different cases. In wet territory one rule may be laid down. In dry—a totally different rule. If a wet magistrate demands as a condition precedent to such issuance, extreme facts—or if he refuse to accept as satisfactory to him any facts offered, who is there to command him otherwise? No one. In such case the search and seizure law would be wholly impotent. On the other hand, should a dry magistrate accept a given state of facts and on same issue his warrant resulting in the discovery of extensive criminal operations, and this was followed by indictment and trial in the District Court, the evidence of what had been discovered by the search warrant would be objected to upon the ground that the facts stated in the affidavit for search warrant were insufficient, and same might be held sufficient or not, according to the view of the trial judge. If he held the same insufficient, the criminal, though guilty, would go unpunished. If he held the facts sufficient, an appeal might be taken to the Court of Criminal Appeals and here the facts might be deemed not sufficient, and in such case again the guilty party would go unpunished. In any event the opinion of the court upon the facts in a given case would furnish no precedent for the guidance of the lower courts in the next case up for trial or before the magistrate, because each would differ on its facts. Every magistrate would necessarily be a law unto himself; and those on one side of the imaginary line separating counties might adopt one standard and those on the other a totally different standard. Nor is this a purely imaginary result. No form of affidavit can be laid down for a guide to magistrates further than to say that if the place desired to be searched be a private residence, and the object be a liquor violation, that there must be two credible persons swearing to the affidavit on their knowledge. What else could be stated in such attempted form? Nothing save that the facts possessed by the makers of the affidavit must be set out and same must be such as to justify a reasonably pru-

dent man in the belief that the law is being violated. So far as affording a guide or precedent upon which the magistrate may depend in the future, this will amount to nothing. He knows that no two state of facts are the same. He remembers that he issued a warrant on facts possibly no stronger than those now offered, and that despite the fact that a still in operation was found, the District Judge before whom the case was finally tried held the facts stated insufficient. Calling these facts to mind, and having no precedent, the magistrate will decline to issue the warrant, and who can blame him—and the enforcement of the law is crippled, vice becomes bolder.

There is another view of the matter. A search warrant is only an exploratory writ issued under prescribed formalities. It authorizes no arrest and no seizure unless upon its execution violations of the law are discovered. It is not to prosecute for things known or provable—but is an effort to find out the truth of things believed in reason to exist, and in the very nature of things known only to the probers upon information and belief. Its purpose is also to enable a man whose property or whose house is about to be searched to know that the person about to search same is an officer armed with legal authority. It seems so true as to be palpable that if the makers of the affidavit had knowledge amounting to proof as is required by the majority—why go through the idle formality of getting a search warrant? Why not at once make affidavit upon information and belief which, under all our authorities, justifies the arrest of the person of the offender and his prosecution for the crime. I repeat that I cannot bring my mind to comprehend any reason for the engrafting on our procedure the course in relation to proper investigation when the courts of this state have uniformly held that upon a less showing, and upon an affidavit made on information and belief, the person of the party complained against can be seized, thrust into prison, tried and condemned.

It would seem but reasonable and consistent that if the affidavit cannot be made on information and belief, then the facts possessed by the makers of the affidavit cannot rest on what anyone told them or information received by them except by the exercise of their physical senses, and in such case possessors of this knowledge would go and make affidavit and cause the arrest of the accused. Again, suppose A. and B. came to the magistrate to make affidavit for search warrant. He wishes to know their facts. A. states one set of facts, B. a different set.

Neither will swear to the other's facts. Can the magistrate accept two affidavits, each stating different facts as measuring up to the rule now laid down by the majority? What I have said does not cover all that might be said concerning the ill-effects reasonably following the abandoning of the uniform holding of this court in regard to affidavits to complaints in this state. I have not discussed Arts. 4a and 727a, which are discussed by my brethren, because neither have the remotest bearing upon the question as to the form of affidavits necessary to complaints for search warrant or for any other purpose. If the Legislature sees fit to pass laws, this court can only construe them when they are so worded as to call for construction, and apply them when appropriate facts arise. But I believe the Legislature quite capable of writing into a law the proposition that an affidavit for search warrant in a liquor case or any other, must get out the facts upon which the makers base their belief that the law is being violated; also that the Legislature could write, if they so desired, that such affidavit could not be made on information and belief. The Legislature not having done so, and not having written anything indicating such to be their purpose, I for one am not going to write into a word a meaning which was evidently not intended; nor am I going to assent to the creation of a hurtful rule when I can legally, and in accord with statutory and judicial announcement of all our own holdings and hitherto Legislature speaking on this question in this state, follow the rule uniformly adhered heretofore, which seems not confusing but plain—not wrong but right—not a hindrance but a help to the enforcement of the law.

I most respectfully but firmly record my dissent.

*Lattimore,* Judge.