CARL SIMS V. THE STATE.

No. 14714.   Delivered January 20, 1932.

The opinion states the case.

*Joe W. Taylor* and *W. H. Stewart,* both of Waco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—Burglary is the offense; penalty assessed at confinement in the penitentiary for two years.

Complaint is made of the reception in evidence of the testimony of Officer McDonald, the substance of which is as follows:   On the 25th

of March, he arrested Carl Sims and Claude Spicer. The arrest was made about two o'clock at night. Sims and Spicer were observed at an automobile which was standing on a side road. They were working around the car. After observing it, McDonald (who was in an automobile) turned his car so that the lights would fall on the car of Sims and his companion. The turtle-back of the car was open. McDonald saw in the rear of the car two sacks which contained something which he could not identify. He got out, walked in front of his own car and then saw some silverware lying close to the two sacks or bundles which he had mentioned. He then walked to the back of the car and looked at the two bundles. Sims and Spicer were repairing their car. The officers did not arrest them until they had finished the repairing. The officer said he did not search the car but looked into one of the sacks and found it contained groceries. The appellant and his companion were taken to Waco, together with the sacks found in their car.

Abot, who was with McDonald and took part in making the arrest, gave testimony, the substance of which is as follows: They observed a car in a by-road off the old Marlin road. They drove their car near the back of the appellant's car. The turtle-back was open so they could see two sacks. They got out of their car and walked to where the appellant and his companion were, and observed near the sacks a pasteboard with silverware or imitation silverware on it. After waiting until Sims and Spicer had repaired their car, the officers arrested them.

Officer Gunterman testified that he made no search or examination of the car until after it was taken to the city of Waco.

The foregoing evidence comes from the bill of exception found in the record.

J. W. Kerley, a merchant, testified that his store was burglarized on the night of the 25th of March; that a quantity of canned goods and meat was taken therefrom; also some silverware, that is, knives, forks, spoons and things of that kind. The silverware taken from the appellant's car was identified by the witness as a part of the stolen goods. The witness also identified some of the groceries taken from the car in which Sims and Spicer were riding.

Claude Spicer, a witness in his own behalf, testified in substance as follows: On the 25th of March, he and Carl Sims had hauled gravel. They had been in the habit of meeting some persons every night, and on that night they went to Orchard Lane for that purpose. About eight o'clock in the evening Sims came to Spicer's home, where they remained, listening to the radio and otherwise amusing themselves until 11:30, when they went to Orchard Lane to see whether Gibson (whom they wanted to see) was there. After waiting for the appearance of Gibson, they drove back on Orchard Lane to the Marlin road. They stopped at a filling station to get some air in the tires. At the filling station was a

small truck. The man in charge of it borrowed from Spicer a pair of pliers. In a conversation the man said, "Can you handle some groceries?" Spicer replied, "I don't know; what you have got?" The man said, "I have got quite a few groceries here; I will sell them reasonable." He told Spicer that there were about $25 worth, but he could have them all for $11. Spicer observed some silverware and told the men he would take the groceries if the silverware would be thrown in with them. The articles, that is, the sacks of groceries and the silverware, were placed in the car under the control of Sims and Spicer. After driving some distance from the filling station, they developed a flat tire and rolled the car off the highway. They were attempting to jack up the car so they might change the tire, and while so engaged the officers appeared. McDonald went to the car, raised the turtle-back and began to examine the things in the sack. Gunterman asked Spicer where they got he groceries and was told that he had bought them. After Sims and Spicer had fixed the tire, the officers searched them and then took them to Waco. Spicer said he bought the groceries with his own money; that Sims was not interested in either the automobile or the groceries. He said their object in being on the road was to locate Lonnie Gibson. The witness denied being in Limestone county that night. He also denied entering Kerley's store. When first arrested with the property, he told the officers the same story that he told on the trial with reference to the acquisition of the property. He said that he did not get all the groceries which the man had in his truck. The groceries were bought from a colored fellow. No inquiry was made as to where the man got the groceries.

Mrs. Claude Spicer testified that her husband and Sims remained at their home until about 11:00 or 11:30 of the night on which the burglary is charged to have taken place; that she did not see her husband any more after that for several days.

The indictment against Sims is separate and distinct from that against Spicer. The indictment against Sims is No. 2471-A, and that against Spicer is No. 2477-A. It appears that Sims and Spicer were tried at the same time. Experience and observation demonstrate that the joint trial of two individuals upon separate indictments leads to confusion and difficulty in preparing a record for appeal. This is illustrated in the present instance by the appearance in the statement of facts of the testimony of Spicer. He does not appear to have been called as a witness for Sims. The contrary appears, as it is specifically stated that Spicer was a witness *in his own behalf* and testified as such. He was not available as a witness for Sims for the reason that the statute declares that persons indicted for the same offense cannot be called as witnesses for each other. See article 711, C. C. P., 1925. To the same effect is article 82, P. C. The only other testimony showing the presence of the alleged stolen prop-

erty is that which comes from the officers who made the arrest. Objection to the testimony of such officers was interposed upon the ground that the information obtained by them was through an illegal search and unlawful arrest. The officers had no search warrant. There was no previous knowledge of the alleged burglary. They had no information coming from any source that the appellant had committed a crime or that he possessed goods which were the fruits of crime. The officers, observing a car late at night and seeing the appellants Sims and Spicer repairing a tire, approached the car, threw their lights on the back of the appellant's car and observed two packages, the contents of which was not disclosed. At the same time they saw some silverware or plated-ware resembling silver. One of the officers opened one of the sacks and ascertained that it contained groceries. Upon such information the arrest was made. It is thought that probable cause for the search and arrest is not shown. There is no analogy between the present transaction and one in which an automobile is searched upon probable cause that it contains intoxicating liquor. Intoxicating liquor is contraband prima facie, and officers having probable cause to believe that an automobile contains such contraband are privileged to search it without a warrant. See Carroll v. United States, 267 U. S., 132, 45 S. Ct., 280, 69 L. Ed., 543, 39 A. L. R., 790; Battle v. State, 105 Texas Crim. Rep., 568, 290 S. W., 763; Chapin v. State, 107 Texas Crim. Rep., 477, 296 S. W., 1095. The same principle might be applicable to stolen goods provided there was possessed by the officers any advance knowledge or information which would amount to probable cause for the belief that the goods observed by them were stolen. In the present instance, they had no information, and there was nothing in the goods which gave such information; nor is it conceived that there was aught in the conduct of the parties arrested to justify the action of the officers in apprehending them and searching their car.

There was available to Sims no means of preventing Spicer from giving testimony in his own behalf. Spicer was on trial and his right to testify in his own behalf was absolute. An effort by exception to the court's charge was made by Sims to limit the testimony against him to that given by the officers making the search and arrest. Since Sims was in no way responsible for the introduction of the testimony of Spicer, there should, in response to the exception made, have been an instruction to the jury protecting the appellant against the use of Spicer's testimany. The responsibility for the appearance in the record of Spicer's testimony not resting upon the appellant, it cannot operate against him as a waiver of his objection to the testimony of the officers on the principle stated in McLaughlin v. State, 109 Texas Crim. Rep., 307, 4 S. W. (2d) 54, and other cases there cited. The officers' testimony having been obtained in an illegal search is made unavailable to the state by the terms of

article 727a, C. C. P., 1925, as amended by Acts 41st Leg. (1929), 2d Called Sess., chap. 45, sec. 1 (Vernon's Ann. C. C. P., art. 727a), declaring inadmissible evidence obtained in an unlawful search.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*