JOE NEWTON v. THE STATE.

No. 14878.   Delivered April 13, 1932.<br>Rehearing Denied June 22, 1932.<br>Reported in 51 S. W. (2d) 590.

The opinion states the case.

*Frank Judkins,* of Eastland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—Burglary is the offense; penalty assessed at confinement in the penitentiary for two years.

This is a companion case to Cole Oglesby v. State, 121 Texas Crim. Rep., 52, 51 S. W. (2d) 587. Save on the question of alibi, the facts are not materially different, and the questions of law are identical. The issue of alibi was submitted to the jury in an appropriate charge.

Upon the authority and reasoning in the companion case mentioned, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—There is found in the motion for rehearing statements, outside the record, to the effect that this case, and the one charging appellant with theft, and also two cases against Cole Oglesby, also charging him with burglary and theft,—four cases—were all tried at the same time and by the same jury. If the cases were tried as suggested it could only have been done by agreement of all parties, and any objection to such proceeding would doubtless have been recognized by the court. We have had occasion heretofore to express our views regarding such procedure. It usually leads to confusion and might result in injustice. Sims v. State, 119 Texas Crim. Rep., 83, 45 S. W. (2d) 579.

No extended opinion was written in this case originally. The opinions on original submission and on rehearing in the companion case of Oglesby v. State, 121 Texas Crim. Rep., 52, 51 S. W. (2d) 587, are here referred to. Because of the insistence that the evidence is not sufficient to sustain the conviction we advert to the facts. On the night of January 28th, 1930, a warehouse in Eastland county was burglarized, and the following property stolen: "A Victor Oxygen Gas Regulator," an "Oxweld Oxygen Gas Regulator," two "Type R-310 Victor Welding Torches," "a "Cutting Torch," two "fifty foot lengths ¼ inch gas hose," and "a set of welding goggles." This identical property was recovered in Fort Worth on February 3d where it was found in a "Model A Ford coupe" which was being driven by appellant; Cole Oglesby was with him.

We here copy the testimony of one of the arresting officers: "I whistled at them and they stopped; they were over in the middle of the street when they stopped and I had them pull over -to- the curb and talked to them; I questioned them about where they were from and everything. After that I told them to get out of the car, that I wanted to search it; one got out first—Newton got out first on the left-hand side of the car; I was standing on the right-hand side at that time, I had been on the left side of the car, but I walked around the rear of the car to the right side and when I did, I noticed the car looked like it was pretty heavily loaded and the springs were mashed. down. Joe Newton was under the wheel when I told him to get out of the car that I wanted to search it; Newton got out of the car, but Oglesby hesitated about getting out and Newton said, 'Go ahead and get out and let him search it;' Oglesby finally got out and I searched him and started searching the car and found a gun in the righthand pocket of the car; that was on the side. Oglesby was sitting on; it was a 44—I got it in my hand and told Oglesby to get back in the car and I walked around in front of the car where Newton was. I saw a gun on Newton when he got out of the car, and while he was standing there I put the gun on him and told him to stick 'em up, but he didn't do it, he reached down in his belt and got a gun and pulled it out, so I told him to lay it down and he walked over and laid it down on the seat of the car under the steering wheel. I told Joe Newton to put his hands up but instead he put his hand on his gun and took it out of his belt; he was some eight or ten feet from the car at that time, but when I made him lay it down he walked over and laid it in the driver's seat. After Newton laid the gun down on the seat of the car I walked over to get the gun and when I reached down to get it—you see Cole Oglesby was sitting there in the car with his hands up, and about the time I got my hand on the gun, Oglesby slapped at my gun in my hand and grabbed for the gun on the seat and my gun went off, or I pulled it off and shot Oglesby right through the side here. I then picked this gun up that Oglesby was reaching for and turned around and Newton was standing there with his left hand in his left hip pocket, so I made him come back there and stand on the running board of the car and hold his hands on top of the car until the ambulance and policemen got there. * * * The emergency car got Newton and carried him to the police station. They found another gun on Newton, in his pocket, when they arrested him. * * * I had a conversation with Cole Oglesby and Joe Newton about where they got the car; I asked them first where they were from and they told me they lived about six miles from Denton, Texas, on a ranch; I asked them how long they had been in town and they said they were just driving in town, so I asked Newton where the car was registered and he said he didn't know, so he turned and asked Oglesby and Oglesby told me some county, but I have forgotten what

county he said; I don't know whether it was registered in the county he said or not. The car had a Texas license plate on it, he told me it was registered in some county some place in West Texas."

In connection with what was said at the time inquiry was first made regarding the car it may be stated that appellant said to the officer "the car is ours." When the car was reached two sticks of dynamite were found under the seat and the property stolen from the warehouse in Eastland county was in the turtle back of the car, which was locked. It will be noticed that when first questioned about where appellant and Oglesby got the car, ownership was claimed by them, and they stated that they lived not far from Denton, and that they were just then driving into town. On the trial appellant did not testify, but through several witnesses who testified by deposition he undertook to establish that at the time of the burglary he was in Oklahoma. He further undertook to explain the possession of the car in which the property taken from the burglarized house was found by the testimony of John Oglesby through deposition, the certificate to which shows it was taken at the state penitentiary of Oklahoma in the city of McAlester. In his deposition John Oglesby claims to have stolen the car in question during the month of December, 1929, in the state of Oklahoma, and also claims to have burglarized the warehouse in Eastland county and stolen the property found in the turtle back of the car when appellant and Cole Oglesby were arrested. He takes the entire responsibility of the theft of the car and the burglary of the warehouse, claiming that he was by himself at the time the two offenses were committed. He further testified that he was stopping at the Texas Hotel in North Fort Worth upon the day appellant and Cole Oglesby were arrested and had been in and out of there for several days; that he loaned the car in question to them for the purpose of driving down town in it. He further claimed that one of the pistols in the car belonged to him and the other belonged to another man by the name of Bates, and that he, John Oglesby, was registered at the hotel under the name of Hall; and that Mr. Ward, who was the manager of the hotel, heard the conversation about loaning the car to appellant and Cole Oglesby.

Ward testified to the same facts with reference to the car having been loaned to appellant and Cole Oglesby by the man known to him as Hall. On his cross-examination he was asked if when an officer from Eastland county came to his house to serve an attachment on him as a witness in this case he didn't tell the officer at that time that he (Ward) was not in Fort Worth, but was in Oklahoma City the day that Oglesby was shot and arrested, to which he replied, "I will say that I didn't—I don't think I told him that." The officer, when questioned about the matter, said he went to Fort Worth to serve an attachment on the witness Ward and that Ward said he was in Oklahoma City the day appel-

lant and Cole Oglesby were arrested in Fort Worth; that he did not know why they wanted him as a witness in the case as he knew nothing about it. On the trial evidence for appellant tended to show that he and his companion had only driven the car from the Texas Hotel in Fort Worth down in the city where the arrest occurred, and had no further connection with it or the stolen property found in it. It was shown by testimony for the state that the car had considerable red mud on it, and that the same kind of mud was on the clothes of both appellant and Cole Oglesby. It was further shown that there was no mud of that character in the city of Fort Worth.

The jury might have predicated a verdict of acquittal of the defense of alibi—which was properly submitted—but evidently the jury did not give credence to the testimony of the witnesses on such issue. This court has no right to disturb a verdict under such circumstances.

It would not have been amiss for the court to have charged the jury that if John Oglesby committed the burglary, and that appellant did not participate therein as a principal, then appellant could not be convicted. However, no special charge to that effect was requested, and no sufficiently specific objection because of its omission was presented calling the court's attention to the matter.

Having given consideration to all the questions urged in appellant's motion for rehearing we are constrained to overrule the motion and it is so ordered.

*Overruled.*